## GEORGE W. RICE AND GUSTAVUS H. MOWER *v.* JOSIAH TALMADGE, and AMOS WARREN, Trustee.

A judgment cannot be revived upon *scire facias*, either against the person or property of the judgment debtor, when there has been no legal service of the *scire facias* upon him, and no appearance in the suit by him.

When a trustee is adjudged chargeable for specific articles of property in his possession, belonging to the principal debtor, the creditor only has a right to demand the property of the trustee, so as to render him liable, upon refusal, to an execution, under the statute of 1797, or to an action on the case, under the Revised Statutes, while he holds an execution against the principal debtor ; and if the time for taking out execution have expired, this can only be obtained by reviving the judgment against the principal debtor, by *scire facias* properly served.

The judgment that a trustee is chargeable is dependent upon statute regulations, and can only be enforced in the mode pointed out by statute ; it can never serve as the foundation for a *scire facias* in favor of the creditor against the trustee.

SCIRE FACIAS. The plaintiffs declared, that they recovered judgment against the defendant Talmadge at the May Term, 1836, of Windsor county court, for $98,02 damages, and $17,29 costs ; that at the same term they recovered a judgement, that Amos Warren, summoned as trustee of Talmadge, was chargeable, as trustee, for $20,13, payable in leather ; that Talmadge absconded before the rendition of that judgment, and still resided in parts unknown ; that execution of said damages and costs yet remains to be made ; and that Warren had ever refused to pay the sum for which he was adjudged chargeable as trustee ;—and the said Talmadge and Warren were called upon to show cause, why the plaintiffs should not have an execution against Talmadge, or an execution against the goods and chattels of Talmadge in the possession of Warren as trustee, for their damages and costs. The writ was served, by delivering a copy to Warren, and by leaving a copy at the house of Warren, as being the last and usual place of abode of Talmadge,—he being absent from the state. The defendant Warren appeared and pleaded,—1, That there was no record of any such supposed recovery against him ;—2, That there was no record of any

Rice et al. *v.* Talmadge & Tr.

such supposed recovery against Talmadge ;—3, The statute of limitations as to himself ;—4, The same as to Talmadge ;—5, That the original judgment was rendered against Talmadge without notice to him of the pendency of the suit, and that [no security, by recognizance, had been given, that such sum should be restored as might be recovered by writ of review, and that the plaintiff had never taken out execution, nor demanded the property in the hands of Warren. Upon the first and second pleas issue was joined. To the third plea the plaintiffs replied, that no execution ever issued upon the judgment against Talmadge, and that the property of Talmadge in the hands of Warren had never been demanded of Warren. To the fourth plea the plaintiffs replied, that Talmadge was absent from the state when the judgment was rendered against him, and had ever since continued to reside out of the state, and had no known property in the state, that could be attached by the ordinary process of law, and that no execution ever issued against the property of Talmadge in the hands of Warren. To the fifth plea the plaintiffs demurred. To the replication to the third and fourth pleas the defendant demurred.

On trial the record described in the plaintiffs' writ was produced. The county court, November Term, 1845,—REDFIELD, J., presiding,—decided, that there is such a record as that declared upon, and that the defendant's fifth plea was insufficient, and that the replications to the third and fourth pleas were sufficient. Exceptions by defendant.

*E. Hutchinson* for defendant.

1. The replication to the third plea is insufficient. No disability, or fact, is averred, preventing the plaintiffs from pursuing the trustee at any moment.

2. The declaration alleges, that the plaintiffs, by their judgment in 1836, established as well a debt against Talmadge, as a judgment lien on $20,13 of his property in the hands of Warren, as his trustee, which property, they insist, has ever since remained in his hands, subject to their lien ; and the object of this process is to obtain execution, with which to reach it. The replication to the fourth plea alleges, that Talmadge, since the plaintiffs recovered their judgment, has had no property in the state, which they could

reach with process. This is a departure, and is bad upon general demurrer. Gould's Pl., c. 2, §§ 27–30; c. 8, § 78.

3. The declaration is insufficient. In this state *scire facias* is not the remedy given by the trustee statute; neither is it given by the general statute, (with the exception of certain specified cases, of which this is not one,) except in conformity to the rules of the common law. The trustee process in this state is not a common law proceeding, nor has it, as regards the trustee, any analogy to common law proceedings. 3 Mason 247. *Huntington* v. *Bishop*, 5 Vt. 186. Whenever a right is created by statute, and a particular remedy prescribed, that form of remedy alone can be pursued. The remedy given by the statutes in force at the time of the rendition of the original judgment was by motion for "rule to show cause;" Sl. St. 152, § 5; and the remedy by the statutes in force when this action was commenced was by "action of the case;" Rev. St. 193, § 28. And, if the plaintiffs have now any remedy against the trustee, they cannot substitute *scire facias* for the remedy given by statute. *Aldis* v. *Lull*, 1 D. Ch. 312. 2 Steph. N. P. 1179.

*Tracy & Converse* for plaintiffs.

We insist, that the record produced is sufficient to sustain the replication to the pleas of *nul tiel record*. The other pleadings seem to result in a question in reference to the statute of limitations. But we have no statute of limitations applying to such a case. The decision of the court, charging a trustee, is in no place called a judgment against the trustee. It is more in the nature of a proceeding *in rem*, or a special verdict. But if it is to be regarded as a judgment, it is not such as could be enforced against the trustee, until execution issue against the principal debtor, and the property in the hands of the trustee be demanded by the officer holding the execution, and the trustee refuse to surrender it; consequently the statute of limitations would not commence running until that time. Sl. St. 152, § 5. Acts of 1835, p. 12, § 4. *Staniford* v. *Tuttle*, 4 Vt. 82. *Hutchinson* v. *Parkhurst*, 1 Aik. 258. *Adams* v. *Clark*, 14 Vt. 9. As it is admitted by the pleadings, that no execution ever issued against Talmadge, and that no demand was made of the trustee, the statute of limitations never commenced running. *Patterson et al.* v. *Patton, Ex'r*, 15 Mass. 473.

Rice et al. *v.* Talmadge & Tr.

The opinion of the court was delivered by

DAVIS, J.    This is *scire facias* to revive a judgment in favor of the plaintiffs against Talmadge, the principal defendant, recovered at Windsor county court, May Term, 1836, for $115,31, debt and costs. The declaration, after setting forth the recovery of the judgment, proceeds to state, that at the same term of the court the plaintiffs recovered a judgment in said suit, that Amos Warren was trustee of Talmadge, to the amount of 20,13, payable in leather, *prout patet per recordum;* and closes by calling upon the said Talmadge and Warren to show cause, if any they have, why the plaintiffs should not have execution against Talmadge, or an execution against his goods and chattels in the hands of Warren.

The principal is alleged to have absconded from the state before the rendition of the judgment; and at the time of bringing the *scire facias* is stated to have gone to parts unknown.   Warren appeared at the return of the writ, by attorney, and filed several pleas in answer to the declaration, upon all of which issues of law were ultimately formed.   Talmadge did not appear, and, upon inspection of the officer's return of service, it appears, that no service was made on him, otherwise than by leaving a copy of the writ at the house of Warren, in the hands of Mrs. Warren, a person of sufficient discretion resident therein, Talmadge being absent from the state,— said house being the last and usual place of abode of said Talmadge. The writ was issued as a summons, and not as an attachment.

The 21st section of chapter 28 of the Revised Statutes points out the mode of service of such writs, when issued as summons, against parties not inhabitants of the state; which is by service on the known agent, or attorney, if any; if not, by leaving a true and attested copy with the clerk of the court, to which the same is made returnable.   It is manifest, that the service in the present case, so far as Talmadge is concerned, is a mere nullity; and the difficulty not being cured by an appearance, there could be no revival of the original judgment, as against him, and no execution could be awarded directly against him, or against his goods and chattels in the hands of his trustee.   *Treasurer of Vt. v. Foster,* 7 Vt. 52.

As these are the only objects sought by this suit, this view of the subject disposes of the whole case, as well in regard to the trustee as the principal defendant.   Nevertheless, as the case has been ar-

Rice et al. *v.* Talmadge & Tr.

gued mainly on other grounds, it may be proper to notice one other aspect, in which the case may be viewed, which has led us to the same result.

The first plea of the trustee avers, that there is no record of any such supposed recovery against him, as is alleged in the declaration, and therefore prays judgment, if the plaintiffs ought to have execution, as prayed for. To which the plaintiffs reply, there is such a record, &c. An issue is thus formed, involving the nature and character of the whole proceedings in the case affecting the trustee.

By the record produced it appears, that the trustee appeared and made disclosure to the effect, that a balance was due from him to the principal, on account, to the amount for which the county court adjudged him trustee; which balance was payable in leather. No time being designated when payable, it may be presumed to have been payable on demand. Treating this as falling within the same principle as contracts payable in specific articles, when the time of payment or delivery had not arrived, as the law then stood, the creditor was constituted the agent of the principal defendant, for the purpose of receiving, and, we will suppose, of demanding the articles so due; and, when received, he was authorized to cause them to be sold on his execution, as in other cases. These creditors, then, so long as they preserved the right of taking out execution against the principal, had the right to require the leather to be delivered to them, and, if delivered, to cause it to be sold thereon. If return be made by a proper officer on the execution, that the trustee refuses to expose and deliver the property in his hands, the court, on motion of the creditor, were required to grant a rule to show cause, why an execution should not go directly against the trustee, his goods, or estate; and, upon affidavit of service, and no sufficient cause being shown, such execution would be awarded. Such was the mode of proceeding under the statute of 1797, then in force.

It does not appear from the case, that any execution was ever taken out against the principal, or any demand made by the plaintiffs upon the trustee for the leather, nor, of course, that any steps were taken to charge the latter, directly, with the payment of the amount due from him; indeed the contrary, in respect to the two first named particulars, is distinctly averred in the plaintiffs' repli-

cation to one of the defendants' pleas. There being no stay of execution ordered, as is authorized whenever the debt from the trustee is not due presently, the plaintiffs, in a year and a day after obtaining their judgment, ceased to have the right of taking out execution; consequently they ceased to have the right to demand and receive the leather, due from the trustee, in order to levy thereon. Things remained in this condition, until the adoption of the present revised code, in 1839, when several important changes were introduced into this branch of the law; among others, that specific articles, which the trustee holds or is bound to deliver, are required to be delivered to the officer having the creditor's execution for collection; when they are to be sold thereon, as in ordinary cases. If the trustee neglect or refuse to deliver them, when lawfully required to do so, he shall be liable to the plaintiff for the value of them, in *an action of the case.* This will be found, probably, to be a more convenient mode of proceeding than the old one, and, as intimated by BENNETT, J., in *Sawyer et al.* v. *Vilas,* 19 Vt. 43, is doubtless the only one that exists. In such action the trustee is authorized to retain the amount of any lien he may have on the property, and may in all cases plead the general issue, and give in evidence any matter of *discharge,* occurring after he was adjudged trustee, which would avail a sheriff, when sued for not delivering property attached on the writ.

It would seem, then, that, in order to lay the foundation for a right to pursue the trustee, by demand of the property, and, in case of its non-delivery, by action of the case, nothing more was necessary, than a revival, by the appropriate proceedings, of a right to issue execution against the principal debtor. Without this it is clear, that no proceedings against the former can avail any thing. As this could not be done by the present suit, for want of legal service on the principal, if for no other reason, as already stated, the amount in the trustee's hands cannot be reached in any way. He can neither be proceeded against by rule, nor by suit, for he has committed no fault, and been guilty of no neglect.

Besides, I apprehend, the adjudication, by virtue of which a creditor fastens a lien upon a debt due from a third person to his debtor, and such third person is required to pay the amount due, deducting costs, to the former, instead of paying it to him to whom he

originally owed it, is not of such a nature, that a proceeding by *scire facias* can ever be applied to it. It has few, if any, of the properties of a judgment at common law.

The existence of the indebtedness is established mainly by the oath of the debtor ; an entire debt is made divisible, when the whole is not required to satisfy the plaintiffs' demand,—the portion not required being unaffected by the factorising proceeding ; the adjudication may be made before the debt is due, as well as afterwards; and, in one class of cases, it is not followed by execution, but a refusal to satisfy the amount ascertained simply subjects the matter to direct contestation by suit between the plaintiff and trustee. In short, such an adjudication is not regarded as a contract between the parties to it, as ordinary judgments are, as was determined in *Clark* v. *Trombly et al.*, cited in *Sawyer et al.* v. *Vilas*, 19 Vt. 43. On the other hand, there are incidents, which somewhat assimilate it to an ordinary judgment. Other evidence than the disclosure of the trustee may be adduced, on both sides, to determine the fact and extent of indebtedness; if for money actually due, and to an amount not greater than the plaintiff's judgment for debt and costs against the principal, execution issues for the whole, and it is collected and paid over, as if it were in the principal's name. This being done, it operates as a bar to any suit by the latter, as well as to any similar proceedings by other creditors ; a record of the adjudication is required to be made, &c. The whole proceeding is anomalous, unknown to the common law, and depending entirely upon statute regulations. The statute gives no such proceeding as *scire facias* in any case of this kind, and none can consequently be sustained. It would in most cases be as unnecessary, as incongruous and absurd.

There is, then, no such record, as, by law, would justify this process ; and upon that issue judgment should have been rendered for the defendant Warren.

. The judgment of the county court is therefore reversed, and judgment rendered, that he recover his costs.