## COUNTY OF WINDSOR,

### MARCH TERM, 1849.

[Continued from Vol. 21, page 418.]

---

.PRESENT,

HON. STEPHEN ROYCE, CHIEF JUDGE.
HON. ISAAC F. REDFIELD,
HON. DANIEL KELLOGG,
HON. HILAND HALL,       } ASSISTANT JUDGES.
HON. LUKE P. POLAND,

---

### JOHN P. BROWN v. FRANKLIN BILLINGS.

The action upon book account, to recover for property claimed to have been sold by the plaintiff to the defendant, but where the property was in fact sold and delivered to a third person, who was doing business in the name of the defendant, and who, as between himself and the defendant, had no right to pledge the credit of the defendant for the purchase of the property, cannot be sustained upon the ground, merely, that the plaintiff was justified in regarding the defendant as the principal in the business, unless he also had sufficient grounds for believing, that such third person was authorized to make the purchase upon the credit of the defendant. And such authority cannot be established merely by showing, that such third person had in a few instances made purchases in the name of the defendant, such purchases having been in fact unauthorized by him before they were made, and not understandingly sanctioned and adopted afterwards.

Book Account. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows.

The plaintiff claimed to recover of the defendant $456,73, for wool sold by him under the following circumstances.

Some time previous to July, 1842, Pliny Parker and Benjamin Billings were engaged in manufacturing woolen goods in Ludlow, under the firm of Parker & Billings, and in September, 1842, they failed in business, and their property was attached by one Spalding, as constable. After the attachment was made, Spalding carried on the manufacturing business in his own name, for the attaching creditors and the debtors, until November 28, 1842, when he sold the cloth, and some other personal property belonging to Parker & Billings, to the defendant. After the sale the defendant agreed with Parker & Billings, that he would go immediately to Boston and make such arrangements there, as would enable them to procure the materials for dyeing in the name of Spalding,—to which arrangement Spalding assented,—and also make arrangements with some firm in Boston, to have the goods thereafter manufactured by Parker & Billings consigned in the name of the defendant. The defendant accordingly made the proposed arrangements in Boston, and the materials for dyeing were procured by Parker & Billings, upon orders drawn in the name of Spalding, for about one year, and then Spalding gave notice to Parker & Billings, and also to the defendant, that his name must be no longer used for that purpose. Upon receiving this notice Parker & Billings informed Spalding, that the business of manufacturing was all the defendant's, and that he might as well order the materials for dyeing in his own name ; and after that they were ordered by Parker & Billings in the name of the defendant. All the goods sent to market were forwarded in the defendant's name from February, 1843, to July, 1847, and all consignments, bills, orders and papers, relating thereto, were made and signed by Parker & Billings for the defendant, or by the defendant in his own name. About the time the defendant went to Boston, for the purpose of making arrangements for the materials for coloring and for the sale of the cloth, it was agreed between the defendant and Parker & Billings, that the defendant should furnish them with stock, so far as he could conveniently, and that from the

avails of cloth, consigned as above mentioned, the defendant should receive his pay for stock, so furnished by him, and for any other liabilities he might have assumed for Parker & Billings. Under this agreement the defendant, until June, or July, 1846, furnished a large portion of the wool manufactured by Parker & Billings; and in manufacturing no attempt was made by the defendant, or by Parker & Billings, to keep the wool, which each furnished, in separate parcels, but it was mingled before manufacturing. The defendant was to have the avails of the cloth first sent to market, whether it was manufactured from wool furnished by himself, or by Parker & Billings. Parker & Billings, during the time above mentioned, were in the habit of hiring help and paying them from the stores in Ludlow, and in such cases the accounts were usually kept against Parker & Billings and were paid in cloth manufactured by them. They also, in a great measure, supported their families by the sale of cloth in the country, and by manufacturing cloth by the yard, or on shares, and from the avails of the business they were enabled to pay some of their old debts. Parker & Billings, during the same time, made a few purchases of wool upon the defendant's credit; but there was no evidence tending to show, that they were authorized by the defendant to do so, or that the defendant was ever advised, that his credit had been pledged by them, until about the time, that he ceased to furnish stock; neither had the plaintiff been informed, previous to the sale of his wool, of but one instance, where the defendant's credit had been pledged by Parker & Billings for the purchase of wool;—and Parker & Billings, as between them and the defendant, were not in fact authorized to buy wool upon the defendant's credit. The boxes and barrels in and about the factory building, containing goods for market, or goods brought from market, were marked with the defendant's name; and the stock and other property in said building were represented by Parker & Billings, until the spring of 1847, as being the property of the defendant; and the defendant, in November, 1844, in an application to an insurance company for insurance upon the stock in said building, represented the stock to be his, and this application was renewed by the defendant from time to time until the spring of 1847. When the contract was made between the defendant and Parker & Billings, both parties understood, that it would have the

effect, to place the property in the factory beyond the reach of the creditors of Parker & Billings; but, as between themselves, it was only made for the purpose of securing the defendant for all advances he might make for stock and other articles put into the factory; but the business was so conducted by them, that the community generally understood, that the defendant was principal and Parker & Billings his agents, and the reports, made by Benjamin Billings and others, came to the plaintiff's knowledge before the sale of wool by the plaintiff. On the twenty seventh day of November, 1844, the machinery in the factory, which had been attached as above mentioned, was sold at sheriff's sale, and was purchased by the defendant and left in the factory, under a contract with Parker & Billings, that they should pay to the defendant nine *per cent.* on the cost, yearly, with the privilege of purchasing the same at cost. The freighting for the factory, to and from Boston, from November, 1844, to January, 1847, was done by one Barton, who received from Parker & Billings about $150 therefor. In January, 1847, the defendant called upon Barton, and inquired to whom he charged the freighting, and, on being informed, that the whole account had been charged to him, he said, that he doubted his liability, but that he would look into it; and in a short time afterwards he informed Barton, that he would pay the balance of his bill, which was then about $250,00.

Under the circumstances above related, Benjamin Billings, on the eighth day of September, 1846, purchased of the plaintiff the wool sought to be recovered for in this action, which was charged by the plaintiff to the defendant soon after the purchase, and was delivered to Parker & Billings.

The county court, May Term, 1848,—REDFIELD, J., presiding, —rendered judgment for the defendant, upon the report.

Exceptions by plaintiff.

*R. Washburn* and *Washburn & Marsh,* for plaintiff, insisted, that, under the circumstances, the defendant was liable to the plaintiff for the wool, and that it was immaterial, what was the secret arrangement between Parker & Billings and the defendant, inasmuch as the defendant held himself out as the principal, and suffered Parker & Billings to hold him out as the principal, and them-

selves as his agents, in the business,—and cited *Pickering* v. *Busk*, 15 East 38; Long on Sales 233; *Munn* v. *Commission Co.*, 15 Johns. 44; *Perkins* v. *Washington Ins. Co.*, 4 Cow. 659; *Andrews* v. *Kneeland*, 6 Cow. 354; *Williams* v. *Mitchell*, 17 Mass. 98; *Odiorne* v. *Maxcy*, 13 Mass. 178; *Whitehead* v. *Tuckett*, 15 East 407, 412.

*S. Fullam*, for defendant, insisted, that in order to charge the defendant, the auditor should have found, that Benjamin Billings bought the wool upon the defendant's credit, and that he was authorized to do so by the defendant.

The opinion of the court was delivered by

Royce, Ch. J. The plaintiff cannot be entitled to succeed in his present suit, unless the transaction between him and Benjamin Billings can be treated as a direct sale of the wool to the defendant, and to him alone. On no other ground is this action of book account adapted to the case. And that it was not in fact such a sale, considered as between the defendant and Benjamin Billings, or Parker & Billings, is rendered certain by the finding of the auditor. The defendant did not authorize the purchase, nor did the property go to his use, or enure to his benefit, in such a sense as to render him liable in the character of a purchaser.

But the defendant contends, that he had a right to consider the defendant the real purchaser, though he may not have been such, as between himself and the firm of Parker & Billings. This is claimed on the strength of those numerous facts and circumstances, which are detailed in the auditor's report. It is apparent, that several of these had a direct and strong tendency to show, that the defendant, for a considerable period, was the owner and principal in the operations of the factory, and, of course, the party for whom purchases of stock for the prosecution of that business would be made. It was not enough, however, that the plaintiff might be justified in regarding the defendant as the principal, unless he also had sufficient grounds for believing, that Parker and Billings were authorized to make the purchase on his credit. Now the only evidence of their authority to buy wool on the defendant's credit arose from the few instances of their assuming to make such purchases, only one of which had

come to the plaintiff's knowledge. But these, being unauthorized by the defendant, could not legally affect him, unless it appeared, that he had understandingly sanctioned and adopted them, as purchases made on his account. And if there was any evidence, properly tending to show this, it was not of a character to be at all conclusive. The same remark may be made in relation to any supposed recognition by the defendant of the purchase in question.

But all the facts and attending circumstances, when duly considered in connection, would not seem to have indicated, at any time, that the defendant was the party solely, if even chiefly, interested in the business of the establishment. The entire property and business had previously belonged to Parker & Billings, who continued all the while to prosecute the same business in the same place. And though it was doubtless notorious, that the defendant furnished much of the stock, yet it must have been equally well known, that Parker & Billings also furnished stock; and this they must have done with their own means and credit, as they never, except on a few occasions, and then without his knowledge, or consent, assumed to use the name or credit of the defendant. It also appears, that they not only hired and paid the laborers from the avails of the business, but supported their own families, and paid some of their former debts, from the same source. They would appear, indeed, to have been constantly and openly in the performance of those acts and the exercise of those privileges, which would not properly belong to their character and situation as mere agents. With all these facts within his observation, we think the plaintiff could not reasonably regard the conduct of the defendant as certain or satisfactory evidence of his absolute and sole ownership. And hence we conclude, that such a liability was not fixed upon the defendant by the sale in question, as would be requisite to sustain the present action.

Judgment of county court affirmed.