ADMINISTRATOR OF ORR N. TOWN *v.* GERMAN F. HENDEE, *Survivor of* RAND & HENDEE.

*Partnership.    Authority of Agent.    Ratification.*

If two persons are associated in business for a particular object, and in such a way that they are not strictly partners as between themselves, they may nevertheless, from the manner in which they transact that business, make themselves liable as partners, to third persons.

A writing authorizing a special agent to sell in the store, and with the goods of the principal, and draw therefrom the avails of such goods as the agent may himself purchase, does not authorize the agent to make purchases in the name of the principal. And if the agent does so purchase them, the fact that they are subsequently received in the principal's store and sold with his goods, in the manner contemplated in the writing, does not amount to a ratification by the principal of the purchase of them in his name.

BOOK ACCOUNT. The action was originally commenced in the county court in favor of the intestate Orr N. Town, then living, against Blanchard Rand and German F. Hendee, as partners under the name of Rand & Hendee, and came into this court by exceptions, which were sustained, whereby it became necessary to recommit the cause to an auditor. This was done at a previous term and at the present term the auditor made his report. During the pendency of the suit both the said Town and Rand deceased. The administrator of Town entered and prosecuted the suit, which proceeded, after the death of Rand, againt Hendee alone.

The facts in the case, as reported by the auditor were substantially as follows. The original defendants Rand & Hendee were holden as sureties to the Bank of Rutland, upon promissory notes of Strong & Buck, merchants in Pittsford, against whom suits were commenced on said notes, judgments obtained, and the goods in their store levied upon and advertised for sale. It was so arranged by all the parties interested, that the goods, in July, 1843, were sold by the sheriff, and purchased at the sheriff's sale by the defendants who gave their own note to the Bank of Rutland, and a store was opened under the name of Rand & Hendee, in which Buck was to sell the above goods, together with about $1400. worth of other goods which the said Strong & Buck then had coming from market, and apply the proceeds of said sales, together with his collections on Strong & Buck's demands, to the payment of said bank claim and some other liabilities which the defendants were under

for said Strong & Buck.  It did not appear that they were to have any further interest in the business, except for the extinguishment of their liabilities.  Under this arrangement Buck took charge of the goods in the store, and sold for cash, produce or credit; the business being transacted under the name of Rand & Hendee, but they taking no active part whatever in it.  The business proceeded in this way until June, 1845, during which time additions were occasionally made to the goods in the store, which were sometimes obtained, on written orders to the merchants in the cities, for the defendants, and sometimes for Buck on his own credit or with means obtained from the store; all of which were commingled with the old, and sold with them, without any distinction.  Some goods were occasionally obtained from one Lillie, who was then teaming to and from Boston and had an account at the store from which he obtained his family supplies.  The transactions with Lillie were all in the name of Rand & Hendee, but were attended to entirely by Buck, and it did not appear that the defendants had any knowledge respecting them, except that upon one occasion Lillie and Rand had a conversation about his letting some goods go into the store, when Rand told him that he had no objection to his letting his goods go into the store, whenever they were wanted, but he must get his pay for them.  In the fall of 1843, it was agreed between the defendants and Buck that it was expedient to purchase some new goods, such as would help sell off those on hand; and Hendee went with Buck to Boston for that purpose and purchased, among others, a small bill of goods of the plaintiff.  These purchases were made by Hendee in the name of Rand & Hendee, in whose name they were marked and directed, though they were selected by Buck; and Hendee explained to all of whom he purchased, the connection he and Rand had with the store, and informed them that they were not going into the mercantile business, but were only buying to help sell off those on hand.  It was the expectation of Buck, and of Rand & Hendee, that these goods would be paid for by Buck from the avails of the sales.  In the fall of 1844, Buck solicited of the defendants, permission to go to Boston and purchase goods on their account, sufficient to fill up the store; but they refused and told him they would neither buy any more goods themselves, or give him authority to get any on their account; but on

Buck's representation, that he could obtain goods on his own credit, if they would give him a writing that he might himself sell and have the avails of all the goods he might thus obtain, they gave him a writing of the following tenor :

"Pittsford, Vt., 5th October, 1844. Gents. Whatever amount " of goods you may sell or consign to Addison Buck, to be sold in " our store with our goods, he is at liberty to draw out the avails of " all said goods sold or said goods, and oblige yours."

"Blanchard Rand.

" G. F. Hendee."

With this writing Buck went to Boston and bought of the plaintiff the bill of goods now in controversy, representing that he was the agent of the defendants; and they were charged by the plaintiff directly to the defendants at the time of their sale and delivery. Said Buck made purchases of other merchants at this time, all of which amounted to thirty-three hundred dollars. It appeared that Buck showed the above writing to some of the merchants of whom he made purchases, but whether it was shown to the plaintiff or not, did not appear; all of the goods so purchased were marked and directed to Rand & Hendee, and were received and sold by Buck in connection with the old goods then remaining on hand, without making any distinction between them which would enable him or any other person to account for the avails of the new goods separate from those of the old. Buck continued selling goods in this way until March, 1845, when the store of goods was again attached, at the suit of the Bank of Rutland against Rand & Hendee upon the debt incurred by them in bidding off the goods in July, 1843, and the goods were subsequently sold on executions obtained in said suits and others. The defendants requested the sheriff who sold the goods not to sell any on the execution against them except those they had themselves purchased, and it did not appear that any others were. The sheriff had, at this time, attachments against Strong & Buck. The auditor reported that, if upon the foregoing facts the plaintiff was entitled to recover the bill of goods sold by him in October, 1844, the balance was $199.55 — otherwise that there was nothing due from either party.

*R. R. Thrall*, for the plaintiff.

The defendants were partners as to the public if not between each other. *Peacock* v. *Peacock*, 2 Camp. 45. Gow. on Part. 13–15.

The defendants were bound by the contract of their agent, though made without authority and contrary to instructions, if they acquiesced in the purchase, and the goods came to their use. *Walsh* v. *Pierce*, 12 Vt. 130. 12 Stark Ev. 32 and note. 2 Kent, 478, 484, 615. Dunlaps Paleys Agency, 165–6–7–8. *Amory* v. *Hamilton*, 17 Mass. 103. *Cairnes* v. *Bleecker*, 12 Johns. 300. The law raises the presumption that they do acquiesce if they fail to give notice of their dissent within a reasonable time after notice of the fact. *Towle* v. *Stevenson*, 1 Johns. Cases, 110. 2 Kent, 480. Dunlaps Paleys Agency, 31, 113, 171.

*E. Edgerton*, for the defendant.

In any view that can be taken of the case, no authority in Buck to purchase on the credit of the defendants can be implied. He was not acting within the scope of his authority, and the plaintiff was bound before he gave the credit to ascertain the extent of that authority. Story on Agency, 116–17, §126–7 and note.

The action on book is not the plaintiff's proper remedy in this case, *Pratt* v. *Bryant et al.*, 20 Vt. 333. *Bundy* v. *Ayer*, 18 Vt. 497. *Brown* v. *Billings*, 22 Vt. 9.

By the court : REDFIELD, CH. J. I. It would seem from the facts found in the report, that the defendants were so far connected in carrying on this mercantile trade for their joint benefit, that one would be bound by the act of the other, to third persons certainly. They seem to a great extent to have been strictly partners in selling off the goods, bid off, and in the purchases made for the purpose of effecting that sale. And if it could be shown, that they were not to all intents partners, *inter sese*, as is doubtless true to some extent, the authority of the one to bind the other, as between themselves, only extending to the object of the adventure, which was very limited ; still, as to strangers one would doubtless be bound to the same extent, as the other, by any implied authority growing out of the manner of transacting the business, And this is the only ground whereby the plaintiff attempts to make a case.

II. There being no express authority given by the defendants, or either of them, whereby the plaintiff, makes out a contract of sale of the goods charged to defendants, we must inquire into the force of the implied authority of Buck to bind the defendants by the purchase of new goods.

1. The only transaction with the plaintiff himself was the purchase of one bill of goods by Hendee himself, Buck having no agency except to select the goods, and plaintiff being expressly informed that defendants were not going into business except to dispose of the stock on hand. This, so far from giving any implied authority to Buck to purchase on defendants' credit, would seem to be a denial of such authority, and a caution to the plaintiff that they did not purpose to buy more goods themselves. This would rather have a tendency to put them on their guard when applied to by Buck to purchase on the credit of the defendants.

The facts in this case are very different from those where the principal has once authorized the agent to buy on credit, or where the agent has bought on credit and the principal has ratified the contract. But here is not only no pretence of an authority to buy on credit, i. e. the credit of the defendants, of this plaintiff, but much to indicate the contrary. So far as the dealing with this plaintiff is concerned, the defendants seem to have been as cautious as could reasonably be required.

2. If there is nothing to show that the plaintiff was fairly justified in selling to Buck on the credit of defendants, on account of his previous dealing with defendants, either personally or through Buck as their agent, and the most which this could amount to would be the fact that the defendants had personally bought one bill of plaintiff on credit and allowed Buck to select the goods which was never regarded as any authority to the agent to go beyond the authority conceded to him in the former case, which to bind the defendants to the transaction in controversy would require the express assent of defendants, which is negatived in the report, we must then inquire what there was in the general course of transacting this business with others, which would fairly justify plaintiff in treating Buck as defendants' agent for buying goods on credit.

The report states that defendants purchased some new goods on

written orders sent to the city, but not that Buck was allowed to send orders in their names, or that he ever assumed to do so. He bought some goods on his own credit, and some with funds taken out of the store. In regard to Lillie's deal with the store, so far as it is brought to the knowledge of either defendant, he is expressly told, that if he lets his goods go into the store, he must get his pay for them, that is, as we infer, out of the store, and that he must not trust anything there on defendants' credit. What Hendee did in Boston in the fall of 1843, in buying goods is precisely the same he did with plaintiff, and will not affect the case either way, inasmuch as the plaintiff has the full benefit of that in the transaction with himself.

And the marking the goods in the defendants' name adds nothing to the fact of their having purchased them, or that Buck was expected to pay the bills, out of the sales in the store, cannot add much force to the transaction of purchase. That part of the arrangement is natural, and in fact just what might have been expected on defendants' claim. We come then to the order which defendants gave Buck, October 5, 1844, with which he went to Boston and bought the goods in controversy of the plaintiff. If this had been an authority to purchase on defendants' credit, although upon certain conditions or limitations, and Buck had bought on credit, without disclosing those restrictions and limitations which might in that case be viewed as special instructions, to a general agent, the defendants would undoubtedly be liable and must take the consequences of the unfaithfulness of their agent.

But here, the defendants did not only not give Buck any general authority to purchase on their credit, but they did not give any authority, general or special, to pledge their credit in any sense. And so far as that was done by Buck, it was wholly without any authority. Buck then being no agent of defendants, for any purpose of buying goods on credit, his acts in so doing will not bind them, unless they have done something to ratify such assumed agency.

And this seems to us the most plausible view of the case for the plaintiff. There is no question that some portion of the avails of the sale of the plaintiff's goods have gone into defendants' business

and so for their benefit. But what amount certainly does not appear, nor does it appear that they have been in fault in regard to it.

For the writing which they gave assumes that the avails of the sales will go into their business and the only effective part of the writing is, so far as plaintiff is concerned, that this shall not deprive him of the title to the money, and to retain and preserve it as his own money, which he may undoubtedly still do. But this is no ratification of the purchase made by Buck in defendants' name. This will not justify plaintiff in charging defendants with the goods as originally sold to them; but only to recover the money in some proper form after demand and refusal, and that question does not arise upon this report. For the amount should have been found to raise the question in regard to the right to recover it in this form of action. And that not only is not found, but it does not appear the auditor was requested to find it, or that the defendants ever refused to account for the money actually received. And unless that is done and improperly refused we do not ordinarily recommit a report.

And as it is certain, unless the statutes passed since the case of *Pratt* v. *Bryant*, 20 Vt. 333, have enlarged the right to pursue such a claim in book account, no recovery could be had for this money, after the amount is ascertained in this form of action, we should not feel justified in directing further litigation, in the action, upon so much uncertainty.

And in regard to the goods on hand, at the time of the final attachment, it appears in the report, that defendants expressly directed the officer not to sell any of these goods on executions against them; so that if it has been done, it was wholly against defendants' will, and of course that is not to affect the right of Buck to buy originally on their credit. At most if it has gone for their benefit against their will, it will only render them liable for the amount in the same way as for the avails of the sales, which have also gone to their benefit, without their fault, so that we do not perceive but the defendants are fairly entitled to judgment on the report.

The case of *Walsh & Co.* v. *Pierce*, 12 Vt. 130, seems to have no analogy to the present. There the auditors found the defen-

dant's liability in express terms, and in addition, that the defendant acknowledged his liability on the account when it was first presented to him, and promised to pay it, and subsequently gave his notes as collateral security to the debt, according to the laws of New York, where the transaction occurred.

This case much more nearly resembles that of *Brown* v. *Billings*, 22 Vt. 9, although in its facts it does not seem, in some respects, so favorable for the plaintiff as that case was.

Judgment for defendant.