ABEL EDGELL *vs.* GIDEON LOWELL and * * * * * BENNETT.

A justice of the peace may adjourn the taking of a deposition, and verbal notice given to the adverse party of the adjournment is sufficient.

One who is supposed to have conveyed away his property with a view to defraud his creditors, is a competent witness for the purchaser to show that the conveyance was not fraudulent.

Where a deed is executed by the grantor with intent to avoid any right, debt or duty of others, and the grantee knows of such intention, at the time of receiving the deed, such deed is void, though the grantee have no wish to defraud creditors, and pays an adequate consideration for the property.

This was an action of *ejectment* for certain land in Lyndon. Plea, the *general issue*. The plaintiff claimed title to the premises demanded by virtue of a levy of an execution in his favor against one Micajah M. Lowell, which was admitted to be regular, and sufficient to entitle the plaintiff to recover, unless he was defeated by a deed, executed some time previous to the levy, by the said Micajah M. Lowell to the defendant, *Gideon Lowell*. The defendant, *Bennett*, was in possession of the premises as tenant of said *Gideon*. At the trial in the county court, the defendant offered to read the deposition of J. M. Morrill, taken on account of deponent's sickness, by the caption of which it appeared the plaintiff had been duly notified, but did not attend. To the reading of which the plaintiff objected, because he, the plaintiff, had not had legal notice of the time and place of taking said deposition. It was conceded by the plaintiff, he had received a regular citation, citing him to be present at the taking of the deposition, on Saturday the 27th day of August, at Morrill's house, at 9 o'clock, A. M. The deposi-

CALEDONIA,
March,
1832.

Edgell
vs.
Lowell et al.

tion offered purported to have been taken on Saturday the third day of September, after. The defendants proved that the plain‐ tiff employed one Halsey Riley to be present for him at the taking of the deposition, on said 27th day of August, agreeably to the ci‐ tation ; that on the 27th day of August, about 10 o'clock in the forenoon, Riley, on his way to attend the taking of the deposi‐ tion, met the magistrate near Morrill's house, and he informed Riley he had been to Morrill's to take his deposition, and he was so sick it could not be taken at that time ; that he had adjourned the taking of the deposition for one week, to wit, to Saturday, September 3d, at nine o'clock A, M. and requested Riley to in‐ form the plaintiff thereof, and also his counsel ; that Riley did give the information to the plaintiff, and also to his counsel, in time for them, or either of them, to have been present at the ta‐ king of the deposition ; that this was the only notice the plaintiff had of the time and place of taking the deposition offered, and that the deposition was taken agreeably to this notice. The objection was overruled, and the deposition read.

The plaintiff then gave evidence tending to prove that, as early as 1824, Micajah M. Lowell was embarrassed, and offered to sell his farm (a part of which was the premises in question) to seve‐ ral persons, requesting them to take a deed of it, and sell it for him, pay themselves well out of it, and pay the balance to him, at the same time telling them he was in debt, and must run away ; and requested them to keep this a secret. He also gave evidence tending to show, that, a short time previous to the execution of the deed of Micajah M. Lowell to *Gideon Lowell*, he, Micajah, told one Hackett, in the presence of the defendant, *Gideon*, that he concluded not to let Hackett have the farm, as they had talked, but was going to let *Gideon* have it, for they would not be so likely to *trustee* him, as they would Hackett ; that after this *Gid‐ eon* told Hackett, he should make it appear he paid his brother about a hundred dollars for the farm—fifty dollars to Butler, and let him have an old horse, and a little money, to run away with ; this was a day or two after the date of the deed ; that at one other time he, *Gideon*, on being asked by the plaintiff where Micajah was, said he had run away ; that he had let him have a horse and some money, and he had gone so far that his creditors would not catch him. The defendants then offered Micajah M. Lowell as a witness, to whom the plaintiff objected. But the objection was overruled, and he testified, (having been released from the cove‐ nants of his deed by defendant, *Gideon*,) that he told his brother

Caledonia,
March,
1832.

Edgell
vs.
Lowell et al.

he was embarrassed, and must sell his farm, and wanted him to buy it; that he declined at first, but finally said if he would take $350 for it he would by it ; that he was to pay the mortgage of about $150, a note to Butler of $50, which *Gideon* was bound for, about $50 to his father and sister, and one hundred in money down ; that upon this condition he executed the deed ; that his brother, *Gideon*, paid $100 in cash, principally in bills, on the execution of the deed ; that he let his wife have a small part of it, and carried the rest away to Montreal with him, being about $70 or $80 ; that in about six days, or a week, he went off to Canada ; that his bother knew of his going, was present when he started, and furnished a horse for him to ride, and, he thought, some provisions ; that at the time of the trade he had not made up his mind to go away, and his brother did not know it till the day before he started ; that he thought it was day light when he started ; that he went to Montreal with his brother's knowledge, where he had remained till within a short time ; that he had no recollection of making the offer to sell his farm, as testified by the witness, and was confident he never did, for he knew such a sale would have been fraudulent ; that when he went to Montreal, he thought he could do better by his creditors to go and labour through the summer, which was his intention then to do ; that after he had deeded, he made a more full and accurate computation of his debts than before, and found the money would not hold out to pay them.

The court were requested, in their charge to the jury, to instruct them, that if they found the fact, that the deed from Micajah M. Lowell to *Gideon Lowell* was made with a view to avoid the right or debt of any creditor, or any person whatever, the deed was fraudulent and void ; that if the deed was not made and executed for a valuable consideration, and *bona fide*, the sale was fraudulent and void as to creditors ; that though *Gideon Lowell*, paid an adequate and valuable consideration for the farm, if the transaction was not in good faith, the sale was fraudulent and void as to creditors ; that if any portion of the consideration was paid by *Gideon Lowell* to Micajah M. Lowell, to enable him to withdraw himself or his effects from the reach of his creditors, thereby to deprive them of their just dues, the sale was void as to creditors ; that though *Gideon* might have secured his debt, he could not make use of it as a pretence to enable Micajah to withdraw his property from the reach of his creditors ; and if any portion of the consideration was so paid, the sale was fraudulent and void as to creditors.   The court instructed the jury, among other

CALEDONIA,
March,
1832.

Edgell
vs.
Lowell et al.

things, that the deed of Micajah to *Gideon* was good, unless de-
feated by the act of the parties; that there were two kinds of
sales fraudulent as to creditors; one where no valuable considera-
tion was paid; the other where a valuable consideration was paid,
but done with intent to defraud the creditors of the vendor, and that
this intent must exist in the vendor and vendee both at the time
of sale; that though Micajah might have sold the farm with a cor-
rupt and fraudulent intent to cheat and defraud his creditors, yet
if *Gideon* did not know it, and purchase with a like corrupt and
fraudalent intent, it would not be fraudulent in him; that if the
jury found that Micajah sold to *Gideon* with such corrupt and
fraudulent intent, that *Gideon*, knowing it, entered into it, and
purchased, and paid the whole, or any part, of the consideration,
with such intent, the sale, as to creditors, was fraudulent and void;
that if *Gideon* found it necessary to take the farm to save himself
from the Butler note, and to pay the $100 to Micajah, and the
debt to his father and sister, the sale would not be fraudulent as to
him, for it was laudable for him to help his brother, who was em-
barrassed, to redeeem the land, and lawful for him to indemnify
himself in the Butler note by purchase of the farm, to give the
preference to the just debts in the family, if it was Micajah's re-
quest, and, so far as he was influenced by such motives, or others
of a like nature, the sale was not thereby fraudulent: but if, as
stated before, *Gideon*, knowing that Micajah sold with a corrupt
and fraudulent intent to cheat and defraud his creditors out of the
avails of the farm, or any part thereof, and *Gideon* purchased with
a like corrupt and fraudulent intent, and paid the whole, or any
part of such purchase, with intent to assist his brother in the fraud,
the sale was fraudulent and void as to creditors, and the plaintiff
must recover. But if *Gideon* supposed that Micajah intended to
pay the purchase money to his creditors, and did not intend to
withdraw himself or his effects from the reach of his creditors, the
purchase would not be fraudulent. The jury found a verdict for
the defendants.

The plaintiff excepted to the decision of the court before men-
tioned, and to the charge to the jury, and a bill of exceptions was
allowed, stating the foregoing facts; whereupon the cause was
brought up to this Court.

*Mr. Fletcher, for the plaintiff.*—The plaintiff contends that a
new trial ought to be granted, 1. Because the court misdirected
the jury in the law of the case. The statute declares *all fraudu-*

CALEDONIA,
March,
1832.

Edgell
vs.
Lowell et al.

*lent and deceitful deeds, &c., made* with *intent* to avoid any right, debt or duty of any person, &c., to be utterly void, &c. This language is plain and explicit. The end and scope of the statute cannot be misapprehended. The only ingredient necessary to make the deed void is that it was made with *intent* to avoid the right of another. This was the issue put to the jury. This was the fact submitted to their inquiry. This was the point on which the court were called upon for instructions. In this case it was the duty of the court to have given the jury an exposition of this statute; to have given them instructions upon the law arising out of the facts, and to have particularly pointed out to them what testimony would amount to the proof necessary for the plaintiff to recover—what would amount to a *bona fide* sale, and what to a fraudulent one, within the true intent and meaning of the statute.—1 *Aikens' Rep.* 120, *Durkee* vs. *Mahoney.* The charge of the court was involved in obscurity, and had a manifest tendency to mislead the jury. Not only that, but they were, as is contended, misdirected as to the law, and instructed to find facts (if they found for the plaintiff) not required nor contemplated by the statute. The language of the charge is most extraordinary. It is redundant with a most formidable array of hard words and imposing terms. The statute is silent as to any " *corrupt and fraudulent intent* of the vendor and vendee." But this sentence is introduced no less than seven times in the charge. The statute does not require that the deed should be executed with a *corrupt and fraudulent intent* of the vendor and the vendee, but only with intent to avoid any right of any person. The true intent and meaning of the statute is, that all deeds made with intent to avoid any right of any person, are fraudulent and void. Fraud in the statute is predicated of the deed, and of the deed only, not of the parties to it. But the court instructed the jury to refer the fraud to the vendor and vendee, and that, if they did not both act fraudulently and corruptly, with an intent to cheat and defraud the creditors of the vendor, the deed would not be fraudulent and void as to the plaintiff. But the fraud contemplated by the statute is an inference of law, not a fact for the plaintiff to prove, and for the jury to find. It depended upon the *intent* with which the deed was made; and it was the duty of the court to have instructed the jury, that if they found the deed was made with intent to avoid the right of any person whatever, the law pronounced it fraudulent and void; and also particularly to have pointed out to the jury what testimony would constitute the proper evidence of such intention, and what proof of

CALEDONIA,
March,
1832.

Edgell
vs.
Lowell et al.

facts would entitle the plaintiff to a verdict. But upon this part of the case the court instructed the jury, " that, though the vendor might have sold the farm with a corrupt and fraudulent intent to cheat and defraud his creditors, yet if the vendee did not *know* it at the time, and purchase with a like corrupt and fraudulent intent, the deed was not fraudulent : also, if the vendee supposed that the vendor intended to pay the whole purchase money to his creditors, and did not intend to withdraw himself or his effects from their reach, the deed was not fraudulent. Where is such language or doctrine to be found ? Not in the statute, nor in the law. The statute is silent as to the corrupt and fraudulent intent of the parties to cheat and defraud creditors ; as to the vendee's knowledge of the vendor's intent being corrupt and fraudulent, and that the vendee must have this knowledge at the time of sale. But the court so instructed the jury, as being the law governing the case ; and so far as this doctrine is not within the intent and scope of the statute, there is error in the charge. Had the charge stopped here, it would have been less exceptionable. But the jury are instructed, if the vendee supposed that the vendor *intended* to pay the purchase money to his creditors, and not to withdraw himself or his effects, the sale was not fraudulent. Here the court make the validity of the deed depend upon the supposition of the vendee as to the appropriation by the vendor of the avails paid, and not upon the intent with which the sale was had, as declared by statute. The act is done by the vendee which enables the vendor to avoid the right of the plaintiff ; and be the consideration adequate, or inadequate, if vendee *supposes* that it will be paid to the creditors, the sale, according to the charge, is valid. When did the question of a sale being fraudulent or not, (passing by the consideration of the intent of the parties to it,) depend upon the supposition of the *particeps criminis* ? What then is the instruction which the court ought to have given, and what the language of the statute ? It is this : that if the vendor executed the deed to the vendee with intent to avoid the right of any one, and the vendee knew it, or participated in it, the deed was fraudulent and void. The court ought to have directed the jury to such facts, if any were in proof, as would have been evidence of the intention of the vendor, and of the knowledge or participation of the vendee ; what was evidence of the deed having been made with intent to avoid the right or duty contemplated by the statute, and what was not. This duty the law imposed upon the court, and, inasmuch as it has not been performed, the plaintiff contends for a new trial.

CALEDONIA,
March,
1832.

Edgell
vs.
Lowell et al.

But the plaintiff contends that there was error in the admission of the deposition of Joseph M. Morrill. The deposition was not taken at the time and place set in the citation; but the magistrate adjourned the taking one week, and then took it, without sending out a new citation. The statute respecting taking depositions is in derogation of the common law, and, therefore, to be strictly pursued. This statute designates certain magistrates to take depositions, prescribing certain forms to be pursued, but authorizes no adjournment. The taking the deposition is a ministerial, not a judicial, act. There is no court. Then there is no power incidental that will warrant an adjournment.—1 *Peter's Con. Rep.* 535, *Buddicum* vs. *Hicke;* 1 *Aikens' Rep.* 268.

*Wm. Mattocks,* contended for the defendant, that *Ch.* 7. *s.* 81, *(Slade's Ed. of stat.)* requires a *written citation* to be served, which, in this case, was done; but this section does not say, nor is it implied, that it must be done on an adjournment. There is, and must, from the nature of the case, be implied a power to adjourn: it is a power incident to all courts, and all acting ministerially; else injustice, needless expense, and absurdity, will ensue. Suppose *Edgell* present the first time; how idle and ridiculous to have cited him again. And is there any difference between being there in person, or by his agent? See act of 1830, *p.* 5, as to a justice giving the oath to poor debtors. No express authority is given to adjourn, for the creditor to prove property in the debtor; but no one doubts its being implied. The administering that oath is no more a judicial act, than taking a deposition: both alike are special duties appended to the office. But if any doubt exists under the act of 1797, the act of 1827, *p.* 5, removes all doubts by *verbal* notice being good in the first instance, and still more so on adjournment. It does not say *personal,* but *verbal.* At common law and English practice, in most cases, except service of writs, notice to the attorney *only* is good; but here it was to the *party* and *attorney.* Plaintiff objects with a very ill grace to the notice coming through his own agent. As to the charge of the county court; 1st. it was agreeable to the plaintiff's request, and not inconsistent with it; and 2d. the charge is in substance according to law: it is like the charge in the case *Bridge* vs. *Eggleston,* 14 *Mass.* 245. There must be fraud proved in the grantor, and knowledge or participation by grantee.—12 *Mass.* 456. So the sale must be *bona fide,* as well as for a good consideration.

Edgell
*vs.*
Lowell et al.

—1 *Swift's Dig.* 266–7 ; 8 *John. Rep.* 446 ; *Cowper*, 434. If the sale is not fraudulent at the time, it can not be afterwards.— *Cowper*, 710–11 ; 12 *Mass.* 110 ; *Swift*, 270, 273.

BAYLIES, J., *delivered the opinion of the Court.*—As to Morrill's deposition, it appears that the justice of the peace, after duly notifying the plaintiff to attend at a certain time and place to the taking of this deposition, did, on account of the sickness of the witness, *adjourn* the taking to another time, at the same place, of which adjournment the plaintiff's agent had *verbal* notice given him by the justice, and this notice was communicated to the plaintiff, as set forth in the bill of exceptions. We are inclined to the opinion, that the justice of the peace had power *to adjourn* the taking of the deposition, and *verbal* notice, given to the adverse party of the adjournment, was sufficient. And we also decide, that Micajah M. Lowell, having been discharged from the covenants in his deed, was rightly admitted as a witness to testify on the part of the defendant. But when we examine the charge of the county court to the jury, we find they were instructed, " that there were two kinds of sales fraudulent as to creditors ; one where no valuable consideration was paid—the other where a valuable consideration was paid, *but done with intent to defraud creditors of the vendor, and that this intent must exist in the vendor and vendee both at the time of sale ;*—that though Micajah might have sold the farm, *with a corrupt and fraudulent intent to cheat and defraud his creditors* ; yet if *Gideon* did not know it, and purchased *with a like corrupt and fraudulent intent, it would not be fraudulent in him.* It is abundantly insisted upon throughout the charge, that the vendor and vendee must be actuated by *like* motives to cheat and defraud the creditors of the vendor, or the sale cannot be fraudulent as it respects the vendee. I cannot approve of this doctrine. It is however true, that if the vendee was a *bona fide* purchaser for a valuable consideration, without notice of any fraud in the vendor, the creditors of the vendor could not avoid the contract, as it respects the vendee. But if the vendee at the time had *knowledge*, that the vendor sold his farm to defraud his creditors, it would make the conveyance void in his hands, as to such creditors, although he had no wish to defraud them ; but purchased, because he considered the farm was *cheap*, and this was the *only* motive, that induced him to purchase. Hence I conclude, that the motives and intents of the

vendor and vendee, may be different, and the conveyance, as it respects the vendee, will be void.

CALEDONIA, March, 1832.

Edgell vs. Lowell et al.

In the case of *Bridge* vs. *Eggleston,*. 14 *Mass.* 250, the court say, "It will be well to establish some precise rules, which may make this branch of litigation less troublesome, than it has hitherto been. Now as the creditor, in such cases, is obliged to prove actual fraud in the grantor, and a participation in, or *knowledge* of, it in the grantee, we think these two branches of his case will admit of the application of evidence to the two parties, which, although apparently inconsistent with, is by no means repugnant to, the common rules of evidence."

"To prove fraud in the grantor, his conduct and his declarations before the conveyance may be the best, and often the only evidence, within the power of the creditor. He at that time is not interested, nor can it be his design to injure those, with whom he may afterwards contract. If fraud is thus proved upon him, then the knowledge of it on the part of the grantee is to be proved; which may be done by showing a trifling consideration, or none at all; by acts inconsistent with the *bona fide* ownership of the property; by confessions of the nature of his bargain; or by other circumstances, tending to show a *knowledge* of the designs of the grantor. Without this latter evidence, the former, as to the designs of the grantor, is wholly ineffectual to defeat the purchase; and a jury, under the direction of the court, will always be able to discriminate; so that the purchaser will not be injured by the declarations of the grantor, unless he be proved to have been *privy* to his fraudulent designs."

*Ch.* 32, *s.* 7, (*Slade's ed.*) says, "And every of the parties to such fraudulent and deceitful conveyance of goods or chattels, bond, bill, note, contract, agreement, suit, judgement, or execution, or any conveyance of houses, lands, tenements, or hereditaments, made with like fraudulent intent, who, *being privy thereto,* shall justify the same to be made, had or executed, *bona fide,* and upon good consideration," &c.

The word, *privy,* as defined by *Webster,* sometimes means, "admitted to the participation of knowledge with another of a secret transaction." This is nearly the sense in which the word is used in the statute : it means a *knowledge* of a secret fraudulent transaction, in which he, who has the *knowledge,* was a party.

The judgement of the county court is reversed, and a new trial granted.