Root *v.* Reynolds.

---

### WILLIAM H. ROOT *v.* CLARK W. REYNOLDS.

#### *Fraudulent conveyance.*

If one is so connected with the property of another, and the business in which it is used, that he honestly supposes it necessary for the preservation of his business interests to purchase it, and does purchase it for a full consideration for that reason, and with no intent to aid the seller in a fraud upon his creditors, the sale will be valid, so far as regards the purchaser, as against the creditors of the vendor, notwithstanding the purchaser knows that the object of the seller in making the sale is to defraud his creditors.

But *aliter*, if the purchaser, with knowledge of the vendor's fraudulent intent, be a mere volunteer in the purchase, and buy the property simply because he can make a good bargain.

The doctrine of *Lowell* v. *Edgell*, 4 Vt. 405, in regard to fraudulent conveyances, considered and explained.

REPLEVIN for a quantity of personal property consisting of stock, tools, &c., suitable for use in an iron foundry. Plea the general issue with notice of special matter in defence, and trial by jury at the March Term, 1858, in Chittenden county, BENNETT, J., presiding.

It was admitted that the plaintiff had a perfect title to one · undivided half of the property in question, and the sole question at issue was in regard to the validity of his title to the other half.

The plaintiff's testimony tended to show that being a tenant in common with one Emerson of the whole property described in the declaration, he purchased the undivided half thereof in question from Emerson, that he paid him an ample consideration therefor, that his purpose in buying this moiety was to prevent a ruinous competition in business, as he owned another foundry within a short distance from the one owned by himself and Emerson, that upon the purchase he took actual possession of the property, and that it was subsequently taken from him by the defendant.

The defendant's testimony tended to show that he attached the undivided half in question, as a deputy sheriff, upon a writ in favor of one Brickett against Emerson, and took and held the property by virtue of such attachment, that Brickett was a creditor of Emerson, that Emerson at the time of the sale of the undivided half of the property to the plaintiff, was insolvent, that the object of both Emerson and the plaintiff in making such sale to the latter was to defraud the creditors of the former by withdrawing the property from their reach, and retaining it for Emerson's use, that Emerson informed Root before the sale that such was his purpose, but not until after the terms of the bargain had been agreed upon, and the bill of sale drawn up but not executed.

The plaintiff's testimony tended to prove, not only that he paid a full consideration for the undivided half of the property, but also that he acted in good faith in the purchase of it, and bought it because he thought it essential for his own benefit that he should buy it so as to maintain the foundry business in the neighborhood, and that he did not make the purchase for the purpose of injuring or delaying the creditors of Emerson in their rights.

The defendant requested the court to instruct the jury that if they should find that, at the time of the sale to the plaintiff, Emer-

son was insolvent, and that his object in making the sale was to defraud his creditors, and that these facts were known to the plaintiff at the time of the purchase, the sale would be fraudulent and void as to Emerson's creditors, and that their verdict should be for the defendant.

But the court, among other things not objected to, charged the jury that if Emerson's object in making the conveyance of the moiety of the property in dispute to the plaintiff, was to withdraw it from the reach of his creditors and to delay them in their rights to collect their debts, and that Root, knowing his object, bought the property of him to aid him in defrauding his creditors and to enable him to withdraw it from their reach, the sale would be fraudulent and void as against the creditors of Emerson, notwithstanding the plaintiff had given a full and ample consideration for the property.

But if, on the other hand, they were satisfied that Root had paid a full consideration for the property and that he acted in good faith, and purchased the property, not for the purpose of lending himself to Emerson to aid him in withdrawing the property from the reach of his creditors, but for his own individual use and only because he thought it necessary that he should do so for the preservation and promotion of his own business interests, his title to the property would be paramount to that of the subsequent attaching creditors of Emerson, though Emerson was insolvent and designed to prevent by the sale the attachment of this specific property by his creditors, and though the plaintiff was aware of this when he bought and paid for the property.

Under the instructions of the court the jury rendered a verdict for the plaintiff, and the defendant excepted to the omission of the court to charge as requested, and to the charge as given.

*E. R. Hard* and *Wm. G. Shaw*, for the defendant.

We insist that if Root, with a knowledge of Emerson's fraudulent intent in the sale, purchased the property, even for his own benefit, and paid a full consideration for it, he thereby nevertheless knowingly assisted Emerson in the perpetration of a fraud upon his creditors. In the eye of the law he participated in the fraud. His intentions of a pecuniary benefit to himself cannot

be separated from the intention of Emerson to defraud his creditors. Root must, therefore, come within the provisions of the statute against fraudulent conveyances, which makes the conveyance null and void as against Emerson's creditors ; *Brooks* v. *Clayes*, 10 Vt. 50, WILLIAMS, Ch. J.

The property of an insolvent legally belongs to him for only one purpose, viz : to pay his creditors. He holds it as a trustee for that purpose alone. Any disposition of it by him for any other purpose is fraudulent, and one which he has no right to make. He, therefore, who purchases property of an insolvent, *knowing* his insolvency, and that he makes the sale for the purpose of defrauding his creditors, knowingly receives property from one who has no right to dispose of it in that way and for that purpose. The fact that he pays a full consideration for it, and buys it because he expects to derive a personal benefit from it makes no difference. The voluntary assumption of the risk of paying the full price is made by him entirely in his own wrong, and will not avail him. The *knowledge* by the purchaser of the fraudulent intent of the vendor is the *test* of his title. The frauddulent design of the vendor would be of no effect unless he found a purchaser. One, therefore, who purchases, knowing the evil designs of the seller, notwithstanding he may have purposes of his own in making the purchase, still assists the other in his fraud by voluntarily becoming an element in the transaction, without the existence of which the fraud could not be consummated. *Lowell* v. *Edgell*, 4 Vt. 405 ; *Bridges* v. *Eggleston*, 14 Mass. 250 ; *Dean* v. *Connelly*, 6 Barr. 249–250 ; *Ashmead* v. *Hean*, 13 Penn. St. (1 Harris) 584 ; *Zerbe* v. *Miller*, 16 Penn. St. (4 Harris) 493–497 ; *Johnston* v. *Harvey*, 2 Penn. (Penn. & Watts) 82, 86, 93 ; *Mateer* v. *Hissim*, 3 *Id.* 160 ; *Lightfoot* v. *Tenant*, 1 Bos. & Pul. 554.*

*George F. Edmunds*, for the plaintiff.

There was no taint nor invalidity in the title of Emerson to the property, and hence the case is quite different from those in which it is held that a purchaser *with* notice of a defect of title is affected by it.

* See also *Robinson* v. *Holt*, 39 N. H. 557, decided in December, 1859.— REPORTER.

Root *v.* Reynolds

The plaintiff cannot be punished for bad motives in another, touching an act right in itself, when his own motives were honest, merely because he knows of the ill motives of the other. A mortgage or assignment made to prefer an existing creditor, and with a view on the part of the grantor to delay his creditors, is perfectly good by all the authorities, although the grantee knew the motive of the debtor. The reason is that the consideration being adequate, a proper legal motive is found in the grantee in the protection of his own interests. The transaction is real, not fictitious, and he receives the conveyance not to aid his debtor, but to aid himself in the proper protection of his own interests.

This the jury have found was the case with the plaintiff. He purchased in order to save his own business from ruin.

The statute against " fraudulent and deceitful " conveyances does not apply to such a case. " Fraudulent " and " deceitful " mean the same thing, that is *deceptive* and *colorable*. A sale, therefore, which is made upon a *good* and *adequate* consideration, and which is a real transaction between the parties, is not prohibited. *Holbird* v. *Anderson*, 5 Term 235 ; *Richer* v. *Evans*, 28 E. C. L. 267 ; *Wheaton* v. *Sexton*, 4 Wheaton 503 ; 17 Vesey 262 ; 3 M. & S. 371 ; *Ward* v. *Dixie*, 53 E. C. L. 892 ; *Beals* v. *Guernsey*, 8 Johns. 348 ; *Bridge* v. *Eggleston*, 14 Mass. 247 ; *Wickham* v. *Miller*, 12 Johns. 320 ; *Hall* v. *Foster*, 12 Pick. 89 ; *Harrison* v. *Phillips Academy*, 12 Mass. 456 ; *Lyon* v. *Rood*, 12 Vt. 233 ; *Colgate et al.* v. *Hill*, 20 Vt. 56 ; *Kittredge* v. *Sumner*, 11 Pick. 51 ; *Brooks* v. *Clayes*, 10 Vt. 37 ; 4 Cushing 441 ; 40 Maine 284 ; *Bush* v. *Sherman*, 2 Doug. 176.

BARRETT, J. Upon the case as presented by the bill of exceptions, it is to be taken for the purposes of the decision now to be made, that Emerson's motive in selling the property in question was to withdraw it from the reach of attachment by his creditors ; that Emerson was insolvent, and this was known by Root, at the time the trade for the property was closed and consummated, that Root paid a full consideration for it, that he purchased it in good faith, not for the purpose and with the intent of lending himself to aid Emerson in withdrawing his property from the reach of his creditors, but for his own individual use, and only

because he thought it necessary for the preservation and promotion of his own business interests.

Emerson's conduct was undoubtedly in fraud of his creditors, and if a knowledge by Root of the fraudulent purpose of Emerson, carried into effect by such sale and purchase of the property, is conclusive to affect him as a party to the fraud of Emerson, then it is clear that he cannot prevail in his present suit.

The case excludes the idea of any fraudulent intent on the part of Root, or that he lent himself to aid Emerson in his fraudulent purpose, or that he was a mere volunteer, purchasing because he could buy the property cheap and make a profitable bargain. It shows that he was connected with the property and engaged in the same kind of business that Emerson had been carrying on with it, and that he bought it from a supposed necessity in order to the promotion and preservation of his own business interests.

It is not claimed that the purchase was a sham and pretence, under which the title was to appear to pass, while the property was still to be held for the benefit and use of Emerson.

The question to be determined is, whether Root, in his position relatively to the property and to the other parties, is, by the mere fact of his knowing of the improper and fraudulent purpose of Emerson, to be affected as if party to a fraud against the creditors of Emerson.

We are not prepared to sustain the position of the learned counsel for the plaintiff to the effect that if Root paid a full consideration for the property, and the purchase was not a pretence and designed as a cloak for the benefit of Emerson, then the transaction was valid as against the creditors of Emerson, and Root is entitled to hold the property. Nor do we regard it needful to discuss this position in the light of the authorities cited in its support. The case of *Lowell* v. *Edgell*, 4 Vt. 405, is an authority against that position, and we are not disposed to question the principle or the reasons on which it rests, so far as the real point that the case presented for decision is concerned. We think cases are not of unfrequent occurrence, which would answer to all the elements of that position, and yet the sales should be held void as to the creditors of the vendor. For instance, if in the present case, Root had been a mere volunteer in the purchase

and bought only because he could make a good bargain, not caring as to the motives and purposes of Emerson in making the sale, then his having knowledge of those motives and purposes would have affected him in his rights as against the creditors of Emerson, though he in fact paid a full consideration for the property.

But not being a mere volunteer for the purpose of taking advantage of Emerson's desire to sell for the motive and purposes by which Emerson was actuated, but having a connection with the property and the business in which it was to be used, and having motives and reasons for making the purchase, entirely independent of Emerson's motives and purposes in wishing to sell, and which were both honest and adequate to every intent, and in exclusion of any intent or willingness to lend himself in aid of Emerson, we think neither principle, legal or moral, nor authority, requires us to hold that mere knowledge of Emerson's intent and purpose should affect him as being a participant in Emerson's contemplated fraud.

It would seem to be carrying legal ethics to a great length to require a person situated as Root was, to forego the preservation and promotion of the interests of his established business by making such a purchase as he did, free as he was from any fraudulent motive, and moved as he was by an amply adequate motive of the most honest and legitimate character. We think so to hold would contravene the law of the subject as it exists in this State, as evinced by the language of Judge REDFIELD in *Lyon* v. *Rood,* 12 Vt. 233, and as established by the case in Windsor county, cited by him in the case last named.

The case that is mainly relied on as establishing a contrary doctrine from that which we adopt and act upon in this case, is *Edgell* v. *Lowell,* before cited.

With the decision of that case, upon the facts on which the question arose, we have no dissatisfaction to express, though we think the learned judge, in drawing up the opinion, gave to the case of *Bridge* v. *Eggleston,* 14 Mass. 250, a force and application somewhat beyond, and aside of its real point and authority. The point in question, in the case last named, arose as to the competency of certain evidence that had been received, of admissions made by the fraudulent *grantor*, tending to show *his* fraudulent

intent in making the sale.   In discussing the propriety of receiv-
ing that evidence, the court was showing the necessity of proving
the fraudulent intent of the grantor, as an indispensible element
of a fraud which would be effectual to defeat the title of the
grantee.   No question arose or was discussed as to what would
be necessary in order to render the grantee a fraudulent pur-
chaser, nor was it of interest to any purpose of the decision accu-
rately to define what would constitute fraud in such grantee.
The remarks of the judge were general, and his language was
not inconsistent with what we hold in this case.   It seems obvi-
ous that he used the term *knowledge* in the sense of such knowl-
edge as imported a concurrence in the fraudulent intent of the
grantor.   That no question was raised or discussion had upon
this point is evident from the language of the charge, viz : " If
Eggleston paid the money for the estate, and did it with a knowl-
edge of the circumstances of the grantor, and with the intent to
aid and assist him to delay or defraud his creditors, the deed
would be void as against them."

Ashmun, counsel for the defendant, said in the argument that the
instructions of the judge to the jury were unquestionably correct.

Now by recurring to the case of *Edgell* v. *Lowell*, it will be
seen that the part of the charge which received the special anim-
adversion of the supreme court, was that in which the judge told
the jury "that though the grantor might have sold the farm with a
corrupt and fraudulent attempt to cheat and defraud his creditors,
yet if the vendee did not know it, and purchase with a like cor-
rupt and fraudulent intent, it would not be fraudulent in him,"
and the impressive repetition to the jury that the vendee must be
actuated by a like fraudulent and corrupt intent with the vendor.
Judge BAYLIES, in the opinion was specially occupied in disap-
proving the idea that the vendee's motives, in order to affect him
with the fraud, must be identical with that of the vendor.   And
in so doing he says, " if the vendee, at the time, had knowledge
that the vendor sold his farm to defraud his creditors, it would
make the conveyance void in his hands, as to such creditors,
although he had no wish to defraud them, but purchased because
he considered the farm *cheap*, and this was the *only* motive that
induced him to purchase ;" and follows this with this language,

Root *v*. Reynolds.

"Hence I conclude that the motives and intents of the vendor and vendee may be different, and the conveyance, as it respects the vendee, will be void."

All that we understand to be meant by this is substantially what we hold in the present case, that if the vendee knows of the fraudulent intent of the vendor, and purchases, having such knowledge *only* because he considered the property cheap, although actuated by no wish to defraud the creditors of the vendor, it would of itself not be in good faith as to such creditors, would be a lending of himself to aid the perpetration of the fraud, would be purchasing in the character of a volunteer, without any adequate motive or purpose, independent of the occasion of the sale and the opportunity to buy the property cheap.

We are satisfied that this court have never understood that case, or the language of the learned Judge, in his opinion, in its application to the facts proved and the charge then under review, as having any other scope or meaning than is here indicated.

With that case fresh before them, and as we are informed, upon very full argument and consideration, the supreme court decided the case in Windsor county in the manner stated by Judge RED-FIELD, in *Lyon* v. *Rood*, and he, in the last named case, declares the law as he does, with the approbation of his associates, who, with him then constituted the court.

Upon a somewhat thorough examination of the cases cited in the argument, we fail to find any substantial authority in opposition to the view here presented, while on the other hand, we regard many well considered cases as going farther than we design to go in this case, and as sustaining the proposition of the plaintiff's counsel that we decline to adopt.

It seems not important to extend comments upon the cases cited upon either side, and the less so for the reason that the principle which governs this case seems to be settled, and to our satisfaction, by the former decisions of our own court.

On the whole, we are satisfied that the charge of the county court was well grounded, and presented the case to the jury in a manner well calculated to hold the plaintiff to a full measure of responsibility for honesty and good faith in making the purchase of the property.

The judgment is affirmed.