## VOLENTINE *v.* HURD and others.

*(Circuit Court, D. Vermont.* October 7, 1884.)

FRAUDULENT CONVEYANCE — MORTGAGE — COMPOSITION WITH CREDITORS — ABSCONDING DEBTOR—FORECLOSURE OF MORTGAGE.

H., being hopelessly insolvent, applied to V., one of his creditors, for a loan of $15,000, to compromise his debts by payment of 25 cents on the dollar. V. loaned him the money with full knowledge of the facts of the case, and took a mortgage, executed by H. and wife, on his homestead farm (which was all of his property within reach of his creditors) in Vermont, duly recorded it, and thereafter advanced the money, taking no precautions to procure its payment to the creditors. The deed of composition provided that H. might sell or dispose of his property within a certain time in furtherance of a settlement with his creditors. V. and some other creditors signed this deed. H. failed to pay the money as agreed, and fled with it to Canada. V. subsequently filed a bill to foreclose the mortgage, making attaching creditors defendants with H. *Held,* that as to all the property, except the homestead interest in the land, the mortgage was void as to the creditors; that V. was entitled to foreclose as to the homestead interest only on payment to the attaching creditors who were parties to the deed of composition the 25 cents on the dollar, as agreed, with interest; and that as to the residue of the estate the bill should be dismissed.

In Equity.

*Martin & Eddy* and *J. K. Batchelder,* for orator.

*A. L. Miner, J. C. Baker,* and *H. A. Harman,* for defendants.

WHEELER, J. This suit is brought to foreclose a mortgage of $15,000 on the homestead farm of the defendant Reuben T. Hurd, situated in Arlington, Vermont, against his attaching creditors as well as against him. The mortgage was executed on the twenty-first day of July, 1880, at Arlington, in the absence of the orator, and was recorded in the land records of Arlington, as required by the laws of the state, on the ninth day of August following. The consideration was advance l, $5,000 on the first and $10,000 on the eighth days of Oc-

tober following, by the orator to a brother of the mortgagor, at Aurora, Illinois, where the orator resides. The mortgagor makes no defense; the creditors defend upon the ground that the mortgage is fraudulent and void as to them.

The mortgagor was, at the time of the execution of the mortgage, hopelessly and desperately insolvent, and this became fully known to the orator when he became informed of the mortgage. The mortgagor started a composition with his creditors, by deed dated July 27, 1880, in which the creditors, signing and sealing, agreed to "accept, receive, and take of and from the said Reuben T. Hurd, his executors and administrators, for each and every dollar of our respective claims and demands against said Reuben T. Hurd, the sum of twenty-five cents, in full satisfaction, payment, and discharge of all and every our debts, claims, and demands; such composition to be paid to us severally and respectively within four months from the date of these presents." And they further therein agreed that he might, "from time to time, and at all times hereafter, within the said term of four months from the date hereof, assign, sell, or dispose of his property, stock, and effects," "for and towards the payment and satisfaction of the composition of the debts, claims, or demands of us and every of us."

There was no provision that all the creditors should sign. The orator was a creditor before the mortgage, and signed and became fully aware of the composition deeds. The defendant the Battenkill National Bank, for a consideration paid, agreed to assign its claim to the brother of the mortgagor for the further consideration of 25 cents on the dollar to be paid, in order that the claim might be brought within the terms of the composition. The defendant Hawley had an attachment on the farm prior to the mortgage, the *ad damnum* in the writ and amount directed by the writ to be attached being $1,500. For a consideration agreed to be paid, he signed the composition deed, and signed a writing stating that he released and discharged the liens by the attachment, and discontinued the suit as to Hurd, and delivered it to him. The other defendants did not become parties to the composition. The 25 per cent. was not paid to the Battenkill Bank nor to Hawley. The mortgagor gave up carrying through the composition, and with the money received from the orator fled to Canada without paying his creditors any considerable part of it. At the time when the money was advanced by the orator upon this mortgage, it covered all the property within the reach of the mortgagor's creditors at that time, and the orator was fully aware of this fact. That the loan was negotiated by the mortgagor for the purpose of obtaining money to pay the 25 per cent. on the composition, well enough appears, and this purpose was understood by the orator. That the mortgagor intended, when he received the money, to take it beyond the reach of his creditors if the composition failed, also is apparent. There is no evidence that the orator knew of this purpose,

but he was fully aware that placing the money in his hands without safeguard would enable him to avoid his creditors if he would.

The case stands differently as between those who were parties to the composition agreement and those who were not. And as to this the Battenkill Bank was in reality, although not nominally, such a party. It brought itself within the scope and effect of the agreement. It is not considered that it would be necessary that all the creditors should become parties to the composition to make it binding. In *Cobleigh* v. *Pierce*, 32 Vt. 789, there was an express provision that all should sign to make the agreement valid. In *Chase* v. *Bailey*, 49 Vt. 71, the provisions were such for dividing the property of the debtor *pro rata* among his creditors that it could not be carried out unless all should sign. Not so here; the agreement of each creditor is several. The consent of more than one creditor might be necessary for a consideration where the contract is simple and a consideration required. But this contract is under seal, which imports a consideration, and would bind Hawley, who sealed it with his seal; and the Battenkill Bank received a consideration for what it entered into, and, besides, the procuring the agreement of the others who did sign, would probably be a sufficient consideration of itself for that undertaking.

The mortgage was fully accomplished within the four months by being made, accepted, and recorded, and the money advanced. The mortgagor had the right to dispose of his property for the payment of the 25 per cent. on the debts at any time within the four months. Any party to the compromise had the full right to purchase the property or take lien upon it during that time for that purpose, but impliedly, by the terms of the agreement, not for any other purpose. Had the mortgagor paid Hawley the 25 per cent. on his claim, and the Battenkill Bank 25 per cent. on its claim, within the four months, they would have had no just ground to complain against the mortgage. If they were defrauded by it at all, it was only as to the 25 per cent. The orator knew that by the effect of the agreement the mortgagor had no right to dispose of his property, by mortgage or otherwise, except "for and towards the payment and satisfaction of the composition." He had no right as to them to loan money on a mortgage to the debtor generally during that time. The property was expressly charged with the trust, as between the parties to the agreement, of paying the 25 per cent. The orator violated the trust when he loaned the money generally on the mortgage without seeing to it that the 25 per cent. was paid. He, at least, took the risk of seeing that the money went for that purpose; and, as it went from him into other channels without the consent of Hawley or the bank, he is responsible, and not entitled to a decree of foreclosure as against them, without providing for the payment of the 25 per cent. of their claims, with interest from November 27, 1880, before which day that amount should have been paid.

By the statutes of Vermont the orator, in a bill to foreclose a mortgage, may join as a defendant any subsequent attaching creditor of the premises sought to be foreclosed. Rev. Laws Vt. § 762. Creditors who did not become parties to the composition, and have attached the premises subsequently to the mortgage, are made defendants under this statute. Their rights are to be determined.

The mortgagor's liabilities were from $125,000 to $150,000, and his assets were only about $50,000. The mortgage was executed at Arlington while the orator was at Aurora, and apparently without his knowledge. The effect of it was to place substantially all of the attachable property of the mortgagor in Vermont under its cover. From the course and proceedings of the mortgagor, the obvious purpose of it was to induce or compel his creditors to accept of the composition, and to provide means for the payment of the percentage if they should accept. When it was brought to the knowledge of the orator, he was, or became, fully aware of its effect. He must have known that its existence on the record would be a great embarrassment and hindrance to creditors. Still he placed it upon the record without then advancing any consideration, and, in. the language of 27 Eliz., left it to stand, "colored, nevertheless, by a feigned countenance and show of words and sentences, as though the same were made *bona fide*, for good causes, and upon just and lawful considerations;" or, in the language of the statute of Vermont, justified the same to have been made and executed in good faith, and upon good consideration. Afterwards he advanced the consideration, but not until all prior liens were, as he supposed, removed out of its way, so that when the mortgagor got the money, which became the consideration of the mortgage, he could hold it in defiance of all his creditors, with the mortgaged premises covered by the mortgage and apparently out of their reach.

The purpose for which the orator testifies he understood the consideration was to be used, was to pay the 25 per cent. on the composition. It does not appear how far the composition had proceeded when he made the advance, but it does appear that many creditors never became parties to it, and that those who did were not paid the 25 per cent. to any considerable amount. The latest information which he received, according to his own account, was from the mortgagor, that he was "getting along very well with compromise; there are a few who stand out about the matter, but not large amounts. Hope to get it all fixed soon." If all the creditors became parties to the composition, and received their share under it, none would be defrauded by the mortgage; but if any did not, and the purpose which the orator understood was to be carried out to pay those who did, those who did not would be defrauded. The property would be gone, and they be left without pay, with the mortgagor's property all the while out of the reach for collecting their pay.

In the language of the resolutions of *Twyne's Case*, 3 Coke, 80, "it

would prove injurious to other creditors of the same debtor in depriving them of all means of satisfying themselves by the stated methods of justice." If the composition was carried out, its purposes were laudable; if not, they would be fatal to those not joining in it. The orator did not wait to see whether all would join or not. He had full knowledge of the situation, and made the advances in view of the effect which would follow a failure. He purposely aided in putting all the attachable property of the mortgagor under the cover of the mortgage beyond the reach of the creditors of the mortgagor, if the mortgage should be upheld. Such conveyances as place substantially all of the property of the debtor beyond the reach of creditors have always been held fraudulent and void in Vermont, by whose laws this case is to be governed. *Edgell* v. *Lowell*, 4 Vt. 405; *Root* v. *Reynolds*, 32 Vt. 139; *Church* v. *Chapin*, 35 Vt. 223; *Prout* v. *Vaughn*, 52 Vt. 451. This mortgage cannot be upheld as against the creditors who are not affected by the composition proceedings to cover property which they could reach, without going contrary to the provisions of the statutes 13 & 27 Eliz., as they have been expounded from the earliest times.

In the report of *Twyne's Case*, which is one of the earliest, it is said: "And because fraud and deceit abound in these days more than in former times, it was resolved in this case by the whole court that all statutes made against fraud should be liberally and beneficially expounded to suppress the fraud." 3 Coke, 82a. The reasons for this resolution have not ceased. The effect of this mortgage, with the purpose for which the orator says it was made, was to take the property from within the reach of the creditors and put it beyond their reach, unless they would compound their debts.

The mortgaged premises were the homestead of the mortgagor and his family. His wife joined in the mortgage, pursuant to the laws of the state, so as to bind the homestead interest. To the extent of the homestead exemption the mortgage was not fraudulent as to creditors, who could in no event reach that. The defendant Hawley's attachment, made before the mortgage, has been pursued to judgment for a larger amount than the writ required to be attached, and followed by a levy of execution.

The attachment of the Battenkill National Bank was made April 25, 1881; that of Franklin E. Lawrence, June 6, 1881; that of Thomas Fleming, August 27, 1881; and that of Jerome B. Bromley, February 18, 1882. All of these latter are still pending. Some question has been made about the validity of these attachments in the argument. But they are set up as good in the orator's bill, and could not well be attacked by him in the suit after that; if they were not, no fatal irregularity is apparent.

The *ad damnum* in Hawley's writ was raised to make it large enough to cover the judgment rendered. Some question is made as to the effect of this proceeding upon the attachment. But no new

cause of action could have been brought in by the amendment, for the law and practice of the state courts do not permit the introduction of a new cause of action in that manner. The attachment is founded upon the authority of the officer conferred by the command of the writ. It is measured by that command. In *Putnam* v. *Hall*, 3 Pick. 445, the command was made, by a slip of the pen, to be to attach, etc., to the value of $6, instead of $600. An amendment by inserting hundred was held to dissolve the attachment. No amendment in the case of Hawley is understood to have been made in this respect. The command of the writ was to attach the goods, chattels, and estate of the defendant to the value of $1,500. The service of it created a lien upon the estate to the amount of $1,500. The mortgage was made subject to this attachment, with others. It did not affect other creditors as to the amount covered by this attachment, but only as to the amount which would remain over. The mortgage is valid, therefore, to cover this amount, in addition to the homestead right, except as to Hawley, and as to him except for the 25 per cent. When the Battenkill Bank made its attachment it came next to Hawley's, and was good against the mortgagor and his property for the amount of the debt and costs within the amount commanded to be attached. The orator could meet it by paying the 25 per cent. of the debt. The mortgage was not fraudulent as to subsequent attaching creditors, except as to the property not covered by this attachment in addition to Hawley's.

It follows that the orator is entitled to a decree of foreclosure of the mortgage as to the homestead right against all the defendants; to a foreclosure against all but Hawley, of the value of $1,500, covered by his attachment, and against him on payment of 25 per cent. of his debt, with interest from November 27, 1880; to a foreclosure against all but the Battenkill National Bank of the amount covered by its attachment, and against that on payment of 25 per cent. of its debt, with interest from the same day; and as to the residue of the estate he is not entitled to a decree against the creditors attaching subsequently to that attachment. This construction of these proceedings makes the mortgage, in the language of those statutes of Elizabeth, as adopted in Vermont, void only as against the party whose right, debt, or duty is attempted to be avoided. Rev. Laws Vt. § 4155. Hawley was promised $125 for signing the composition. It may be thought that this should be provided for. But this was outside the composition, and the promise void even as to the party making it. *Case* v. *Gerrish*, 15 Pick. 50.

Let there be a decree of foreclosure, with costs of a foreclosure, without contest as to the homestead right, to the value of $500, against all the defendants; as to the attachment lien of Hiram Hawley to the amount of $1,500 against all but him, and against him on payment to the clerk for his benefit by the orator of 25 per cent. of his debt, with interest from November 27, 1880, with his costs; as to

the attachment lien of the Battenkill National Bank against all but that bank, and against that on payment to the clerk for its benefit of 25 per cent. of its debt, with interest from November 27, 1880, with its costs; that unless such payment be made within 30 days, the bill be dismissed as to them, respectively, with costs; that the bill be dismissed as to the residue of the estate, and the defendants Lawrence, Fleming, and Bromley, respectively, with costs.