ALBERT N. STEVENS *v.* REUBEN KIRK, AND L. ROBINSON AND S. M. FIELD, *Trustees.*

*Trustee Process.　Fraud.*

It is not in all cases necessary for the report of a commissioner in trustee process to show in terms that the sale was fraudulent; such facts may be found as to enable the court to say as matter of law that the sale was fraudulent and void.

Where a grantee executes a bond giving the grantor the right to redeem the land purchased, and subsequently makes an exchange of this for other land with the consent of the grantor and the understanding that the right of redemption is still to continue in the land received in exchange the same as before, it is *held*, that if the grantee is trusteed by a creditor of the grantor, the land received in exchange will stand in the same condition so far as the trustee process is concerned as the land deeded in exchange stood while the trustee held it.

The grantee would not be liable as trustee of his grantor for a note not collected which he received in the exchange of lands as the difference in value.

The facts found by the commissioner are not sufficient to authorize the court to pronounce the sale by the defendant to the trustees fraudulent and void as to the creditors of the defendant.

TRUSTEE PROCESS.　The commissioner appointed to take the disclosures and proofs in this case reported that it was proved that the plaintiff then residing at St. Albans, on the 1st day of November, 1858, sold to the defendant's son and one Graves, then doing business as merchants at South Troy under the style of Kirk & Graves, a quantity of goods, and received in payment the notes of Kirk & Graves to the amount of $2500., signed by Reuben Kirk as surety of that date.

Kirk & Graves failed in business in the summer of 1859, and the goods on hand, including what remained unsold of those purchased of the plaintiff, were by them assigned to Reuben Kirk and Madison Stebbins, to secure them for having endorsed and become surety for Kirk & Graves.

The plaintiff obtained an injunction against the defendant and Stebbins' making any sale or disposal of these goods, which injunction was dissolved in the fall of 1859, mainly on the ground of the solvency of Reuben Kirk, the valuation of whose property at that time the commissioner found to be from four to six thousand dollars, which consisted mainly of his farm and stock ; and his indebtedness was trifling, except that to the plaintiff.

It was proved that the trustees Robinson & Field were aware of the defendant's liability to the plaintiff upon these notes as early as the summer or spring of 1859, and the defendant counselled them to some extent about the propriety of selling his property at auction, and Robinson wrote the advertisement, caused it to be printed, and aided the defendant in the distribution of the same.

The commissioner found that the condition of the defendant and family was such that a disposition of his farm and stock and the purchase of a small place, if well done, was wise economy, and that such was his avowed motive. On the 19th of May, 1860, Reuben Kirk and wife conveyed by deed to Robinson & Field for $2000. all of the defendant's real estate ; and all his attachable personal property or nearly so was sold at auction in the spring of 1860. The grantees also executed a bond giving Kirk a right to redeem said real estate, dated the 24th day of May, but made in fulfilment of an understanding at the time of the sale.

It was proved that $2000. was bid and offered for a portion of the land conveyed to Robinson & Field, and it was apparent that the defendant was desirous that the title of his farm should pass to them, but the expectation of redemption of the premises could not have been the reason, for the defendant testified that the conveyance was absolute, but the negotiation and bargain was made mostly with the defendant's wife and daughter.

The land was conveyed to said trustees for less than the actual value. Field had a mortgage on said premises, and Robinson paid to him a sum sufficient to reduce the mortgage to one thousand dollars. The trustees sold and conveyed the land in Troy (a portion of the land conveyed to them) to William Blake for a conveyance to them of Blake's tavern stand in Derby and Blake's note of $500., which was done with the consent of the defendant.

From the proofs and circumstances the commissioner reported that he was satisfied that the approaching maturity of the plaintiff's notes and the liability of the defendant's property to attachment at the suit of the plaintiff, was a leading motive with the defendant in disposing of his property in the manner he did, and that he had a purpose to place his property in a condition less accessible to his creditors,

and that as between them and the defendant the conveyance was *fraudulent.*

There was no evidence that either Robinson or Field had any connection with Kirk or his family about disposing of the defendant s property for any such illegal purpose. But said trustees knew that one of the plaintiff's notes would mature in November, and that the defendant was disturbed about his financial affairs, and were willing to improve that condition of the defendant to drive a sharp bargain and make money.

The statements in the disclosures were not contradicted by evidence, except as to the character of the transaction, whether fraudulent or not.

As the defendant's indebtedness to the trustees was larger than the money or avails of any property received, aside from the land, the commissioner adjudged that the trustees would not be liable even though the plaintiff's claim be conceded that the conveyance was fraudulent as to the defendant's creditors.

The commissioner therefore adjudged that the trustees Robinson & Field were not liable in this action.

Upon this report the county court, December Term, 1862, rendered judgment in accordance with the report of the commissioner. Exceptions by the plaintiff.

*B. H. Steele,* for the plaintiff, cited *Root* v. *Reynolds,* 32 Vt. 139.

*C. Robinson* and *J. L. Edwards,* for the trustees, cited *How* v. *Field,* 5 Mass. 390 ; *Baxter* v. *Currier,* 13 Vt. 615 ; *Hunter* v. *Case,* 20 Vt. 195.

PECK, J. The question in this case is whether the trustees are chargeable.

On an accounting on the basis of the prices agreed upon between the trustees and the principal debtor at the time the trustees received the assets real and personal, the commissioner's report does not show any balance in the hands of the trustees subject to the trustee process. This is the result after deducting the claim of $318. made by the trustee Robinson for money paid to Mrs. Keith which the commissioner disallows. It is true that exclusive of interest there would be a trifling sum due from the trustee Robinson, but the balance of interest in favor of the trustee to which he probably would be enti-

tled, would turn the balance the other way ; but whether it would or not the sum being less than $10. could not be held by trustee process. Whether the conveyance of the real estate is regarded as *bona fide* or as fraudulent as to creditors, does not vary this result, if the creditor goes for the stipulated price of the land, since in either case if the plaintiff seeks to recover the price by trustee process, he thereby adopts the sale to the trustees and must take it according to its terms, and be content with the price agreed upon by the parties to the conveyance. Beyond the price agreed no indebtedness was created. The whole $2000., the price agreed upon for the real estate, having been accounted for to the principal debtor, the trustees cannot be chargeable for the real estate unless something has transpired since the sale to the trustees to change the relation of the parties even if the conveyance should be held to be fraudulent as to creditors.

It is well settled that a purchaser of real estate under a conveyance fraudulent and void as to creditors, cannot be held as trustee on account of the land held by him under such conveyance, unless he is indebted to the principal debtor for the price stipulated.

But the plaintiff claims that the conveyance to the trustee was fraudulent and void as to creditors, and that as the trustees have conveyed the premises, the plaintiff can hold the trustees for the value of the land or the avails of such sale.

There are some facts reported by the commissioner tending to show the conveyance fraudulent and void as to creditors, but no fact is reported which is conclusive, nor does the commissioner find the fact that it was fraudulent. But it is claimed that the facts found are sufficient for the court to pronounce it fraudulent. It is true as claimed in argument, that it is not in all cases necessary for the report to show in terms that the sale was fraudulent, such facts may be found as to enable the court to say as matter of law that the sale was fraudulent and void. It was proper for the commissioner after stating the facts and circumstances appearing in his report, to draw a conclusion of fact which he has done in this case, as the facts previously stated by him do not necessarily make the conveyance void. The ultimate finding of the commissioner is that a leading motive and purpose of the principal debtor in disposing of his property as he

did, was to place his property in a condition less accessible to his creditors, and that as to the principal debtor the conveyance was fraudulent, but that there was no evidence that either of the trustees had any connection with him or his family about disposing of the defendant's property for any such illegal purpose, but that the trustees knew that the plaintiff's notes would mature in November after, (one of them,) and that the defendant was disturbed about his financial affairs, and were willing to improve that condition of the defendant to drive a sharp bargain, and make money. This knowledge and conduct on the part of the trustees, in connection with other facts previously stated in the report, point in the direction of knowledge on the part of the trustees of the fraudulent design of the grantor, but it is not conclusive. The report would have been more explicit and satisfactory had the commissioner found in terms whether the trustees knew of the fraudulent design of the principal debtor, but he has not done so. He has however reported that "there was no evidence that either Robinson or Field (trustees) had any connection with Kirk or his family about disposing of the defendant's property for any such illegal purpose." This probably was intended to exclude the idea that the trustees had knowledge of, or were privy to the fraudulent purpose and design of Kirk, and we think we must so regard it. Taking the whole report together therefore, it is not inconsistent with good faith on the part of the trustees towards creditors. We have no occasion therefore to decide whether a fraudulent grantee of real estate who has sold the property, can be held as trustee for the avails in his hands. But if such grantee can be thus held, and we should hold this conveyance to the trustees fraudulent, there might still be a difficulty in holding the trustees chargeable in this case. It appears that the trustees when they took the conveyance from Kirk, executed a bond giving him a right to redeem. The bond is dated a few days after the date of the deed, but the report shows that the bond was executed in pursuance of an agreement made cotemporaneous with the execution of the deed to the trustees. Taking the deed and bond together, the conveyance has the character of a mortgage with a power of sale. When the trustees exchanged the premises for the tavern stand in Derby, and took a note for $500. for the difference, it was done with the consent of Kirk and

with the understanding that Kirk's right of redemption was still to continue in the tavern stand the same as before. This appears from the disclosures which the report states were not controverted except as to the question of fraud. It is difficult to see why the tavern stand is not in the same condition so far as the trustee process is concerned as the land deeded in exchange while the trustees held it. As to the $500. note taken in the exchange as the difference in the value, it not being collected it cannot be held by trustee process against these trustees, even if it could be treated as the property of the defendant Kirk. In any view of the case we are unable to see how the trustees can be held chargeable.

Judgment affirmed.