PROUT AND OTHERS v. WARREN VAUGHN; WILLIAM J. VAUGHN AND ANOTHER, TRUSTEES; AND J. N. PHILLIPS AND ANOTHER, CLAIMANTS.

*Fraudulent · Conveyances. Gen. Sts. c. 65, s. 28.* Bona-Fide *Purchaser for Value without Notice. Conveyance of Property Exempt from Attachment.*

A conveyance which, if operative, would place substantially all the grantor's property beyond the reach of creditors, which is made with intent to accomplish that result, and that known to the grantee, comes within the scope of the statute against fraudulent conveyances.

The grantor of property so conveyed took from the grantee a mortgage of such of the property as consisted of realty, to secure payment of part of the purchase-money, and of his own motion assigned it to creditors to whom he was largely indebted, on condition that the assignment should be void if he paid them all he owed them and saved them harmless from any liability they had incurred or might incur for him. *Held,* that as the assignees paid nothing as for a purchase, and incurred no new liability, they stood, as against parties entitled to impeach the conveyance, on the title of the grantor, and not as *bona-fide* purchasers for value without notice.

The property so conveyed consisted of real and personal property of the value of $16.000. The conveyance was to a son and a daughter of the grantor, to whom the grantor was indebted in the aggregate sum of about $2,000. It was agreed at the time of the conveyance that those debts should be applied in part payment for the property conveyed, and said mortgage was to secure payment of the remainder. The assignment was made about a fortnight after the conveyance. After the conveyance and assignment, another creditor caused the personal property included in the conveyance to be attached and sold on execution as the property of the grantor. *Held,* that the subsequent appropriation of the property to the payment and security of creditors, being not in pursuance of any intent to that end, but in part a matter of afterthought, and in part a proceeding *in invitum,* did not avoid the effect of the fraudulent intent as to creditors on which the grantor and grantees acted; and that the application of the debts due to the grantees to payment for the property conveyed, would not save the conveyance from the effect of the fraud inherent therein.

In an action against the debtor by one of the defrauded creditors, in which the grantees were summoned as trustees and the assignees were cited as claimants, it appeared that process was not served until after the personal property had been attached as aforesaid. *Held,* that such process would not reach the personal property, as it had been taken on other process before such process was served; nor the real property, because the conveyance was void under the statute.

Fraud upon creditors is not predicable of the conveyance of property that is exempt from attachment.

BOOK ACCOUNT, with trustee process. A commissioner was appointed, who found the following facts :

In March 1876, the defendant owned and occupied a farm in Danby which, with out-lands thereto belonging, and horses, cattle, farming utensils, and other personal property thereon, of the value of about $1,600, which he also owned, was worth about $15,600. He also owned four farms in Wallingford, several farms and lots of land in Mount Tabor, and an interest in a house in Tinmouth of the value of $150. He then owed his daughter, the trustee Catherine, upwards of $1,700, and his son, the trustee William, upwards of $600. He was indebted to the claimants jointly and severally and to others to whom the claimants were on his account jointly or severally liable as sureties, to the amount of $15,140.66 ; and to others, including the plaintiffs, to the amount of upwards of $7,000. The claimants then being alarmed at his situation asked for security, but it was not given. On April 6, the defendant conveyed his lands in Wallingford to his son Samuel, for the nominal consideration of $6,000, on condition that Samuel should pay him $550 in two years, $2,000 in three years, and $2,000 in four years from date ; and mortgaged his lands in Mount Tabor to his son Warren, to secure payment of a note for $5,000, payable in four years from date. Whether anything was due to those sons did not appear, and nothing on account of such debt was reckoned in the indebtedness above stated. On May 23, the defendant sold and conveyed his farm and lands in Danby, and the personal property thereon, to the trustees, who were then living with him, and in his employ, for $16,000 ; and the trustee Catherine applied $1,500 of what the defendant owed her, and the trustee William applied $500 of what the defendant owed him, in part payment therefor ; and for the remainder they executed and delivered to the defendant their promissory note, secured by mortgage on the lands so sold, for $14,000, payable to him or bearer, $300 in one year, and $500 each year thereafter, until the whole should be paid, with interest annually. The trustees then took control of the property so conveyed, it being understood that the defendant and his wife should continue to live with them, and they in fact remaining and continuing to do such work as they were willing and able to do. The effect of those transactions, if operative, was to place sub-

stantially all the defendant's property beyond the reach of his creditors at that time, and until the notes given by Samuel and the installments of the note given by the trustées should fall due ; and it was found from the circumstances that the defendant intended thereby to accomplish that result, and that the trustees knew of the defendant's situation to a considerable extent, understood his object, and knew what the effect of the transactions would be. Soon after the trustees took control as aforesaid, one George Capron attached all the personal property, except such as would be exempt from attachment, as the property of the defendant, and caused it to be sold on execution, bidding it off himself. The trustees thereupon arranged with him to give up to them his claim to the property and against the defendant, and gave him therefor their promissory note for the full amount, a part of which they afterwards paid. The deed from the defendant to the trustees and the mortgage back were witnessed by the claimant Phillips, and acknowledged before him on May 31, when he became aware of the transactions between the parties thereto. The defendant afterwards offered to turn out to the claimants for their security the note and mortgage executed by the trustees, and the claimants accepted the offer and took the note ; and on June 8, the defendant executed to them an assignment of the mortgage, on condition that the assignment should be void, if he paid them all he owed them, and saved them harmless from any liability they had incurred or might incur for him. They immediately gave notice to the trustees that they held the notes and mortgage, and the trustees assented thereto. The security thereby obtained by the claimants was insufficient, and they never obtained any other. The defendant never paid them to any but a small extent, if at all, and never relieved them from liability on his account. Process in this action was served on the trustees on March 1, 1877.

The commissioner considered that although it might be that the property was in the first instance conveyed contrary to the rights of creditors, still, as the trustees were themselves creditors, what they received in payment of their debts went for the benefit of creditors ; that as what they did not receive went to the claimants, who were also creditors, all ultimately went for the benefit of

creditors, and not contrary to the rights of any; that the personal property went for the benefit of Capron, and could not be again held by another creditor; that the note for $14,000 was a valid debt as against the trustees, but was well assigned to the claimants as against the process herein; that if the sale could be avoided by the plaintiffs so as to reach the property, it could not be done by charging the trustees with the real estate herein; that "that fact" could not "take the right to the note from the claimants, nor restore any debt against the trustees to the defendant, to be reached by this process"; and that therefore the note was the property of the claimants, and that the trustees had not any goods, effects, &c. The plaintiffs excepted to the report, for that they were entitled to a judgment charging the trustees as such, and a judgment against the "claim of the claimants." At the September Term, 1879, the court, DUNTON, J., presiding, rendered judgment on report of the auditor against the defendant, and rendered judgment, *pro forma*, on the report of the commissioner in accordance therewith, with costs to the claimants; to which the plaintiffs excepted.

*Prout & Walker*, for the plaintiffs.

The conveyance to the trustees was, as to creditors, fraudulent and void. *Pope* v. *Andrews*, 1 Sm. & M. Ch. 135; *Preston* v. *Griffin*, 1 Conn. 393; Kerr Fraud & Mistake, 196.

The trustees by accepting the conveyance, justified it as *bona fide*, and thus participated in the fraud. That they were creditors, did not purge the transaction of its illegality. Gen. Sts. c. 65, s. 28, c. 113, s. 33; Kerr Fraud & Mistake, 197, and note; *Mackie* v. *Cairns*, 1 Hopk. 373; *Hyslop* v. *Clarke*, 14 Johns. 458; *Weeden* v. *Hawes*, 10 Conn. 50; *Crane* v. *Stickles*, 15 Vt. 252; 1 Story Eq. Jurisp. s. 369; Roberts Conveyances, 435. The conclusions of the commissioner on that point were therefore erroneous. Where the inference that ought to be made from proved facts is so obvious that the referee could only have been prevented from drawing it by misapprehending the law, the report will be set aside. *Skiff* v. *Johnson*, 57 N. H. 475.

The claimants, by accepting an assignment of the fraudulent

notes and mortgage, were affected by the illegality of the transaction. They did not change their condition in order to obtain the assignment. The mortgage itself contained evidence of the fraud. They knew that the defendant was insolvent. The circumstances of the taking of the assignment indicated an intention on their part to assist the defendant in his illegal purpose. *Root* v. *Reynolds*, 32 Vt. 139. True, the claimants were creditors, but " the law will not allow a creditor to make use of his demand to shield his debtor." 1 Am. Lead. Cas. 41. The transaction must not only be *bona fide* as between the parties to it, but must not be *mala fide* in respect to other creditors. Kerr Fraud & Mistake, 195.

A creditor at the time knowing of the fraudulent character of a conveyance cannot set it up as against parties intended to be defrauded by it. The conveyance was as to creditors utterly void. Gen. Sts. c. 65, s. 28, c. 113, s. 33. The privity contemplated by the statute includes assignees and grantees. Thus, the effect of the statute is expressed in *Hildreth* v. *Sands*, 2 Johns. Ch. 36. And see *Cadogan* v. *Kennett*, Cowp. 43 ; *Drury* v. *Cross*, 7 Wal. 299. Again, the case is that of a sale by a fraudulent vendor of a fraudulent note and security, the vendee having notice of the fraud. See *Thompson* v. *Berry*, 3 Johns. Ch. 395 ; *Streit* v. *Sanborn*, 47 Vt. 702 ; *Beals* v. *Guernsey*, 8 Johns. 446 ; *Wickham* v. *Miller*, 12 Johns. 320 ; *Hildreth* v. *Sands, supra ; Leach* v. *Francis*, 41 Vt. 670 ; *McLane* v. *Johnson*, 43 Vt. 58 ; *Elkins* v. *Parkhurst*, 17 Vt. 105 ; *Fergusson* v. *Norman*, 5 Bing. N. C. 76 ; *Forster* v. *Taylor*, 5 B. & Ad. 887 ; *Wake* v. *Griffin*, 8 Reporter, 722.

But if the rule of these cases is not applicable, the case is distinguishable from *Root* v. *Reynolds*, 32 Vt. 139, and *Gregory* v. *Houghton*, 33 Vt. 241.

We are then brought to the question, for what property, rights, or credits the trustees are chargeable. The commissioner finds that all personal property fraudulently conveyed, except what was exempt, was attached and sold by Capron to the trustees. The evidence in relation thereto was parol, and amounted to nothing. A decree in chancery, or a conveyance of real estate, could be as well proved by parol. The question of its insufficiency remains,

although its admission was not objected to. Kerr Fraud & Mistake, 198, note ; *Foulk* v. *McFarlane*, 1 W. & S. 297. But here was exempt property. No benefit of exemption is claimed, and the trustees are chargeable therefor as well as for the other personal property.

W. H. *Smith*, for the trustees and claimants.

The entire property was applied in payment of the defendant's just debts. The defendant might prefer creditors. Fraud cannot be predicated of a legal transaction ; and it matters not what the intent was with which the act was done. The case is covered by *Gregory* v. *Harrington*, 33 Vt. 241. The understanding that 'defendant and his wife might live with their children formed no part of the consideration of the purchase. The full value of the property was paid.

The exception to the report is, for that the plaintiffs are entitled to a judgment charging the trustees as such. This may not be by reason of the lands they hold, however fraudulent the transaction by which they were acquired, as lands are not " goods, effects, or credits." *Hunter* v. *Case*, 20 Vt. 195. The trustees cannot be held chargeable by reason of the personal property, since they held none of that at the time the trustee process was served by any title from the defendant, as all the personal property not exempt had been sold on execution against defendant ; and the trustees purchased in the property after the sale.

The case discloses nothing to disprove the good faith of the claimants, or to impair their title to the notes assigned, whatever the findings may be as to the intent of the defendant, and the knowledge of the trustees as to such intent.

The opinion of the court was delivered by

BARRETT, J. The statute enacts, chapter 65, s. 28, that all fraudulent conveyances of lands, or of any estate or interest therein, procured, made, or suffered, with intent to avoid any right, debt, or duty of any person, shall, as against such person, be utterly void. The same is in substance and effect repeated in chapter 113, s. 32, and by section 33 it is made a penal offense.

'The report states the various conveyances of real estate and personal property made by the defendant to his children, two of whom are the trustees summoned in this case, and that, if operative, said conveyances would substantially place all his property beyond the reach of his creditors; and that he intended thereby to accomplish that result; and that said trustees understood his object and what the effect would be. This makes a case within the statute of a conveyance utterly void, as against the defendant's creditors; and in this case, the plaintiffs were such creditors, as is understood and treated in the argument. The conveyance to the trustees was inoperative as against the plaintiffs, and their mortgage back to the defendant had no effect upon the title as against the plaintiffs.

Whatever might be the case with the claimants as to their mortgage security by the assignment to them of said notes and mortgage by the defendant, in case they were in fact holding the position of *bona-fide* purchasers without notice of the vitiating fraud, still they cannot be regarded as holding such position in the present case. They took said assignment by way of security for a pre-existing debt and liability, and for future debts and liabilities. They paid nothing as for a purchase. They advanced nothing by way of present loan. They incurred no new liability. This being so they can stand, as against parties entitled to impeach the title conveyed by the defendant to the trustees, only upon the title which the defendant had by the transactions between him and the trustees. This is so irrespective of the fact that Phillips, one of the claimants, knew, before said assignment to him and the other claimant, of the fraudulent character of the transactions between the defendant and the trustees.

It is claimed that the effect of the fraudulent intent as to creditors, upon which the defendant and the trustees acted, is avoided by the fact that the property was at last appropriated to the payment and security of lawful creditors of the defendant; and the case of *Gregory* v. *Harrington*, 33 Vt. 241, is cited and relied on. In that case the intent of the sale and transfer was to enable the vendor to appropriate the property to the payment of certain of his creditors, and that intent was carried out. Such intent was

58

not fraudulent in the sense of the statute, nor unlawful in any view. In this case the intent of the transaction of conveyances by the defendant, was not to pay any creditors, but his daughter and one son to the amount of $2,000 of existing indebtedness, with a property of the value of $16,000. The subsequent disposition of it was not the carrying into effect of any purpose that existed in the making of said conveyances, but was contrary to the purpose that then existed, which was, " to place substantially all the defendant's property beyond the reach of his creditors at that time, and until the notes and installments should fall due." The personal property that went to the benefit of the creditor Capron was appropriated by force of attachment and sale on execution, in defiance of the conveyance by defendant to the trustees. The assignment of the note and mortgage to the claimants was more than a fortnight after the fraudulent conveyance to the trustees. Such an afterthought appropriation to the claimants, and such an *in invitum* appropriation to Capron could not operate to give validity to conveyances that were " utterly void ", " null and void ", at the time they were executed between the parties, and which had rendered them liable to criminal penalty. The fact that part of the purchase price was to be paid by applying it in payment of $2,000, owing by defendant to the trustees, does not save the transaction from the inherent fraud that vitiates it. A transaction by which the payment of $2,000 to two creditors, was to be made the occasion of putting $14,000 of the property conveyed beyond the reach of the defendant's other creditors, by the intent and co-operation of the parties to said conveyance, is vitiated by the intended and enacted fraud which is necessarily involved in the transaction. The doctrine of *Pope* v. *Andrews*, 1 Sm. & M. Ch. 135, we regard sound, and properly applied in that case. That doctrine is decisive in this.

The views thus expressed as to the character and results of the transactions in question, do not lead to our holding that the plaintiffs can reach the property or its avails, which was the subject of the fraudulent and void conveyances, by trustee process. The personal property had been otherwise taken by process of law before the trustee process was served.

The notes had been transferred to the claimants before the process was served. The plaintiff claims that the entire transaction between defendant and trustees was void, and the court so hold. This leaves the title to the real estate as to defendant's creditors the same as if no conveyance of it had been made by the defendant. This of course leaves the trustees the same as if they had not taken the conveyance and given their notes therefor.

Our trustee law is wholly statutory. The "goods, effects and credits" meant by section 48, held by a conveyance or title that is void as to creditors, do not embrace real estate, held by such conveyance or title. Such conveyance or title is declared " utterly void" as to creditors. Such creditors may proceed directly against the real estate by attachment, and so are not embarrassed by such conveyance. If the trustees had made a conveyance of the real estate thus fraudulently conveyed to them which would be valid in their grantee, and so would have realized valuable consideration for their notes given or payments made for their purchase of the defendant, and the land have got beyond the reach of attachment and levy in behalf of defrauded creditors, we are not prepared to say how the matter would have stood for consideration. This case does not present it, for, as before said, the fraudulent conveyance of the defendant is " utterly void " as to defendant's creditors, and has resulted in no obstacle to attachment and levy upon the estate attempted to be conveyed.

The disposition made of the case is upon the ground and views above set forth. The trustees are held not chargeable, because the process does not reach real estate fradulently conveyed by the defendant, and not because the claimants have prior right to what might otherwise be held by the plaintiffs against the trustees. The plaintiffs do not claim to hold the trustees on the score of the note given by them to the defendant. The plaintiffs stand in no relation to the property exempt from attachment that was conveyed by defendant to the trustees. Fraud against creditors is not predicable of the conveyance of property thus exempt ; and so the title to it is not impeachable by creditors of the debtor making such conveyance.

The exceptions do not state what the judgment was as to trus-

tees. It is inferable that it was that trustees be discharged. Such is the judgment of this court. As to claimants, the judgment allowing them costs is reversed, and judgment that plaintiffs recover of claimants one half of·the commissioner's fees, paid by plaintiffs,—no other costs to be taxed between plaintiffs and claimants.