## NATIONAL UNION BANK

v.

## A. O. BRAINERD AND TRUSTEES.

FRANKLIN COUNTY, 1893.

Before:   Ross, Ch. J., Taft, Rowell and Tyler, JJ.

*Trustee.   Fraudulent conveyance of lands as cover.   Purchase money.   Taxes paid by defendant.   Nominal conveyance of personal property.   Debt payable out of store.   Costs.*

1.   One who holds the deed of another's lands as a cover merely is not chargeable as the trustee of such person.

2.   Nor, if the deed is upon an expressed consideration which has never been paid, is the trustee liable in that respect, for

there never was any sale of the land, and no indebtedness from the trustee to the grantor was created by the conveyance.

3. And if the trustee has been adjudged a trustee in a previous suit, brought by a different plaintiff, on account of this same conveyance, upon the theory that the sale was an honest one and the purchase price unpaid, the satisfaction of that former judgment against the trustee by the defendant will not raise a promise upon the part of the trustee to · repay the defendant the amount of such judgment, for as between them it belonged to the defendant to pay it.

4. The fact that the defendant received certain sums from the proceeds on this land, which in the former trustee suit were applied in reduction of the amount due on the purchase price, and so in reduction of the judgment obtained against the trustee in that suit, would not make the trustee chargeable for such sums in this suit.

5. Nor would the trustee be chargeable with sums paid by the defendant for taxes assessed against those lands, nor for money expended upon them.

6. One cannot be made liable as trustee by reason of personal property nominally conveyed to him as a fraudulent cover, where the real ownership and possession continues in the defendant.

7. Where the trustee was found indebted to the principal defendant in a certain sum payable out of the store of the trustee, it was error to render a money judgment against him, but the judgment should have been for payment in accordance with the terms of the contract.

8. Since the trustee was only adjudged chargeable upon an item as to which he admitted his liability in his disclosure, it was error to refuse him costs.

9. The refusal of costs to the plaintiff as against the claimants was discretionary with the county court, and cannot be revised in supreme court.

Assumpsit.    Heard at the September term, 1892, THOMPSON, J., presiding, upon the report of a commissioner. Judgment for the plaintiff against the defendant, A. O. Brainerd.    Hatch was adjudged liable as trustee in the sum of $11.75 and was denied his costs.    Stone & Son were adjudged liable as trustees for $442.31 and interest; and

Phelps was adjudged liable as trustee in the sum of $500 and interest.   It was adjudged that the funds in the hands of Stone & Son and Phelps did not belong to the claimants, Brainerd & Hatch.   The plaintiff was denied costs as against the claimants.   To the action of the court in adjudging Hatch liable for only $11.75, and in denying it costs as against the claimants, the plaintiff excepted.   To the judgment adjudging Hatch liable for $11.75 and denying him his costs, Hatch excepted.   To the judgment adjudging Stone & Son and Phelps liable as trustees, and that the funds in their hands did not belong to the claimants, Brainerd & Hatch excepted.

In August, 1883, the Vermont National Bank and the St. Albans Trust company both failed, and the defendant, A. O. Brainerd, who was a stockholder in both institutions, a director in one company and a trustee in the other, was thereby involved in serious financial difficulties.   Prior to this failure he considered himself, and probably was, a man of considerable property over and above his liabilities.   He was indebted some $40,000 on his own account, and as indorser for others about $30,000, at the time of the failure.

Among his assets he owned a steam saw mill at Richford, Vt., and a tract of timber land of some two thousand acres in the township of Sutton, Canada, from which he obtained logs with which to stock his mill. .

September 19, 1883, the defendant, Brainerd, in view of the situation in which he was placed by these failures, and in anticipation of suits that would probably be brought against him, went with his son-in-law, Hatch, one of the trustees of this suit, to Canada, for the purpose of executing a mortgage of the aforesaid land to secure certain creditors, but was informed by the notary, to whom he applied, that a mortgage could not be executed in the absence of the mortgagees.   Thereupon Brainerd proposed to Hatch to convey the land to him upon condition that he should assume to pay

within two years from that date certain debts of the defendant, which it had been proposed to secure by the mortgage, and a deed was executed by which the lands were conveyed to Hatch by an instrument which specified that Hatch was to pay debts therein described amounting in all to $11,000. This instrument was signed by both Hatch and Brainerd.

Soon after this conveyance Brainerd himself paid, in one way and another, the debts specified in said deed, and Hatch in fact paid no consideration whatever for the conveyance of the land to him.   Still later, on March 16, 1887, the defendant, Brainerd, conveyed to Hatch by quit-claim deed these same lands for the expressed consideration of $11,300.

The commissioner found that in point of fact both these deeds were given for the purpose of preventing the creditors of the defendant, Brainerd, from attaching the lands conveyed; that it never was the purpose of either the defendant or Hatch to convey the property in this land to Hatch; that Hatch never intended to pay the debts specified in the first deed, and never intended and was never expected to pay the $11,300 expressed as the consideration of the second deed; and that Brainerd had at all times continued to manage and control said lands as his own, having among other things paid certain taxes assessed against the same, and been to certain expenses in the management and improvement of the same, the amount of which was specified in the report of the commissioner.

September 20, 1883, Gyles Merrill, one of the creditors of the defendant, Brainerd, attached his said sawmill at Richford, upon a writ returnable to the April term of the Franklin county court, 1884, at which term he obtained judgment upon the same for $5,423.98.   Upon this judgment an execution was taken out and levied on said mill property, June 20, 1884, and the said property was appraised and set off to said Merrill at the sum of $3,700.

Numerous attachments of the same property were made immediately following that of Merrill.

June 21, 1884, the defendant, Brainerd, was in possession of and running his saw mill at Richford, and on that day an interview took place between him, Gyles Merrill, A. F. Brainerd, son of the defendant, and Hatch, his son-in-law, in relation to the purchase of the mill set off on Merrill's execution, and an arrangement was then made that in case the mill was not redeemed by the defendant, Brainerd, Merrill should deed it to A. F. Brainerd and Hatch in consideration of $3,700. Four hundred dollars was at that time paid Merrill by the defendant, A. O. Brainerd, upon this contract.

It was at this time suggested that A. F. Brainerd and Hatch should form a co-partnership under the firm name of Brainerd & Hatch, for the purpose of operating this saw mill, if they obtained title to it under the arrangement with Merrill, and that A. O. Brainerd should manage the business as their agent.

January 15, 1885, Hatch transmitted to Merrill, who resided at Haverhill, Mass., notes to the amount of $2,500, signed by A. F. Brainerd and himself, and secured by mortgage upon the mill property, with a check for the balance due upon the contract of purchase. In return Merrill executed and delivered to A. F. Brainerd and Hatch a deed of the property. At that time there was a considerable stock of logs and a considerable quantity of lumber in the yard at Richford, and this property was all turned over nominally to the firm of Brainerd & Hatch.

A. O. Brainerd from this time on managed the business in the same manner that he did before, save that all contracts were made, both for the purchase of logs and for the sale of lumber, and in the operation of the mill in the name of Brainerd & Hatch by A. O. Brainerd, agent. A. F. Brainerd had no means of any account, never put any

property whatever into the business, living the greater portion of the time in the state of Alabama. Hatch was a hardware dealer in the village of St. Albans, devoted his entire attention to that business, and contributed neither time nor money to the business of Brainerd & Hatch.

The master found that the defendant, A. O. Brainerd, conducted the business entirely upon his own responsibility, furnished all the means that were used in the business, and did what he pleased with the proceeds of the business, and he further found that in point of fact neither A. F. Brainerd nor Hatch ever had any interest whatever in the same, and that their names were used simply as a cover for the convenience of A. O. Brainerd in conducting the business without liability to attachment upon the claims of his creditors.

March 19, 1884, one H. A. Brown brought suit against A. O. Brainerd and H. W. Hatch, trustee, upon which he recovered judgment against Brainerd in the sum of $2,283.-14, said case being ordered to lie with the court as to the trustee, Hatch, until the disposition of the suit with the Plattsburg Bank hereafter referred to.

October 25, 1884, the Plattsburg National Bank of Plattsburg, N. Y., began suit against the defendant, Brainerd, in which Hatch was summoned as trustee. This suit was returnable to the February term of the United States Circuit Court for the district of Vermont, 1885, and at the May term of that court judgment was entered against the defendant, Brainerd, in the sum of $11,137.11, damages and costs. The case was referred to a commissioner to take the disclosure of the trustee, Hatch. The commissioner found that the sale of the Canada lands to Hatch was a *bona fide* sale upon the understanding and expectation that he was to pay the debts specified in the deed of conveyance, but that in point of fact those debts had not been paid by Hatch, but had been paid by Brainerd. He furthermore reported that Brainerd had taken from these lands timber and other materials and

had sold one parcel of land, so that he had received in all from this source $2,342.92.

Upon these facts, at the October term, 1886, Hatch was adjudged liable as trustee in the sum of $10,918.87; that being the difference between the amount of the debts specified in said deed with interest, and the amount which Brainerd had received from the land as above. This judgment was made subject to the lien of Brown in the state court, as above set forth, and deducting the amount of that judgment with interest, Hatch was found liable as trustee in the suit of the Plattsburg Bank in the sum of $8,348.75.

This judgment was adjusted by the giving of notes signed by Hatch and endorsed by Brainerd, and secured by mortgage upon the Canada land. The Brown judgment was paid by the giving of Hatch & Brainerd's note for $1,500 and a check for the balance. · The notes given by Hatch in satisfaction of the Plattsburg judgment, and the note of Brainerd & Hatch, given in satisfaction of the Brown judgment, were all subsequently paid by A. O. Brainerd.

At the time of the service of the writ in this suit, Hatch was indebted to the defendant, A. O. Brainerd, in the sum of $11.75 for wood and lumber, which the defendant, Brainerd, agreed to trade out at the store of Hatch.

The debts by reason of which Stone & Son and Phelps were adjudged liable as trustees were due to the firm of Brainerd & Hatch, and that firm entered as claimants to those funds in this suit.

*H. A. Burt* and *Wilson & Hall* for the plaintiff.

The judgments against Hatch in the suits by the Plattsburg Bank and by Brown are no bar against holding him as trustee in this suit for the reason that in those suits he falsely stated what he knew was untrue and concealed facts which would have exonerated him, as a trustee. *Seward* v. *Heflin*, 20 Vt. 144 ; *Holmes* v. *Clark*, 46 Vt. 22 ; *Parker*

v. *Wilson*, 61 Vt. 116; *Smith* v. *Stratton*, 56 Vt. 362; *Allen* v. *Spafford and Tr.*, 42 Vt. 16; *Gregory* v. *Harrington*, 33 Vt. 241.

He cannot avail himself of the fact that a different condition of things was found by the commissioner in that suit. *Roberts, Admr.*, v. *Lund*, 45 Vt. 82; *Carpenter* v. *McClure*, 39 Vt. 1; *Boutelle* v. *McClure*, 30 Vt. 674; *Plattsburg Bank* v. *Brainerd and Tr.*, 28 Fed. Rep.; *Gifford* v. *Ford*, 5 Vt. 532.

The conveyance of the Canada lands, March 16, 1887, was a valid one, and Hatch is chargeable as trustee with the purchase price.

*Farrington & Post* and *E. H. Powell* for Hatch and Brainerd & Hatch.

The court should have recommitted the report so that it might appear what Brainerd received from the Canada lands with which to pay the notes given in discharge of the Brown judgment and the judgment of the Plattsburg Bank, for if the plaintiff is right in its contention, these lands must belong to Hatch, and Hatch must be entitled to the proceeds. *Green* v. *Adams*, 59 Vt. 602, 607–8, 610–12; *Prout* v. *Vaughn and Tr.*, 52 Vt. 451; *Woodard* v. *Wyman and Tr.*, 53 Vt. 645; *Carpenter* v. *McClure*, 39 Vt. 1; *Stevens* v. *Kirk and Tr.*, 37 Vt. 204; *Gregory et al.* v. *Harrington*, 33 Vt. 241; *Hunter* v. *Case*, 20 Vt. 195; *Crane* v. *Stickles*, 15 Vt. 252; *Brooks* v. *Clayer et al.*, 10 Vt. 54; *Hutchins* v. *Greenough and Tr.*, 9 Vt. 295; *Baxter & Edmunds* v. *Currier and Tr.*, 13 Vt. 615; R. L. ss. 1,132, 1,155, 4,155.

The opinion of the court was delivered by

ROWELL, J.   One who holds a deed of another's land merely as a cover to cheat the owner's creditors, is not

thereby chargeable as his trustee, for the land is not "effects" in his hands or possession, nor its value a "credit," and there is no indebtedness to constitute a "credit." In such case the land is attachable in the ordinary way, but if the grantee should be held chargable with its value, he might, after having paid that value to one creditor, have the land taken from him by another creditor, and thus lose it after having paid for it.    *Woodward* v. *Wyman*, 53 Vt. 645 ; *Prout* v. *Vaughn*, 52 Vt. 451 ; *Stevens* v. *Kirk*, 37 Vt. 204 ; *Hunter* v. *Case*, 20 Vt. 195 ; *Baxter & Edmunds* v. *Currier*, 13 Vt. 615 ;    *How* v. *Field*, 5 Mass. 390 ; *Bissell* v. *Strong*, 9 Pick. 561 ; *Risley* v. *Welles*, 5 Conn. 431.

Although in the defendant's first deed of the Canada land to the trustee Hatch it was expressed that Hatch should pay $11,000 of the defendant's debts therein specified, yet that transaction was not intended as a sale to Hatch, nor as a trust for him to execute, but only as a cover to prevent the land from being attached by the defendant's creditors. Hatch has never paid any of those debts, but they have been paid by the defendant, as the understanding was between them that they should be. The defendant has ever since possessed and used the land the same as before, and Hatch has received nothing therefrom. But it is claimed that the further deed of that land from defendant to Hatch, executed on March 16, 1887, for the express consideration of $11,300, no part of which has been paid, is not found to have been fraudulent, and that therefore Hatch is indebted to the defendant by reason of that transaction, and hence is chargeable as trustee on account thereof. But this transaction was not considered a sale to Hatch any more than the other was, nor as making Hatch indebted to the defendant, but only as another step in the fraudulent scheme in which they were engaged, taken for the purpose of more certainly accomplishing the end in view. This is the result of the finding. It follows, therefore, that Hatch is not chargeable on

the score of this deed any more than on that of the first deed.

But it is further claimed that as the trustee judgment against Hatch in the Plattsburg Bank case was paid with money and property that belonged to the defendant, the law raises a promise on the part of Hatch to reimburse the defendant therefor, and that this is an indebtedness that can be reached by the trustee process. But the Canada land transaction, on account of which Hatch was charged as trustee in that case because it was found to be an honest sale to him with the price unpaid, is now found not to have been a sale at all, but a mere covering of the land to cheat the defendant's creditors, and this case must stand upon that finding; therefore, when that judgment was paid with the defendant's money and property, the law raised no promise on the part of Hatch to reimburse the defendant therefor, for as between them that was not Hatch's debt to pay, but the defendant's, and he has no claim against Hatch in respect of the matter.

It appearing that the defendant derived $2,342.92 from sales of some of the Canada land and from wood and lumber taken therefrom by him, it is claimed that Hatch is chargeable for that amount, as it was allowed to him and deducted from his liability in the Plattsburg Bank case, being treated and applied as part payment of the purchase-price of the land. But as those avails never came into Hatch's hands, and that whole business was a fraud, as now found, Hatch is not chargeable for that amount.

The defendant paid taxes on the Canada land, paid money on debts, and expended money in and about the lumber business, and entered the money on his cash-book as paid for Hatch; but that was a fraud. The land was the defendant's as between him and Hatch, the debts were his, and the lumber business was his; and therefore no implied promise

arises on the part of Hatch, as the plaintiff claims, to pay the defendant for these disbursements.

It is also claimed that Hatch should be chargeable for the value of the logs and lumber at the mill when the attachment in this case was made.   But the commissioner finds that whatever was said or agreed upon between the defendant and Brainerd & Hatch in respect to the sale of that property to the latter, the defendant retained the ownership and possession thereof down to the time of the attachment, and so it was not goods or effects in Hatch's hands, nor did he ever become indebted therefor to make a credit.   If that property had gone into Hatch's possession, a different question would have been presented.

Hatch owed the defendant $11.75 for wood and lumber that he had bought of him, and the agreement was that the defendant should " trade at Clark & Hatch's store, and take his pay for it that way"; and he did so after this suit was brought.   It does not appear that the defendant ever called for payment out of the store and was refused, so Hatch never became liable to pay in money, and the defendant's creditors cannot step in and vary the contract so as to compel payment in money in the first instance.   *Fuller* v. *O'Brien*, 121 Mass. 422 ;   *Willard* v. *Butler*, 14 Pick. 550 ; Barrett, J., in *Bartlett* v. *Wood*, 32 Vt. 378.   It was error, therefore, to render a money judgment against Hatch for that debt.   The judgment should have been for payment out of the store, according to the agreement found by the commissioner.   This is the only judgment warranted by the statute.   *Bartlett* v. *Wood*, above cited, is authority for such a judgment.   There the trustee was charged in a sum certain, to be paid in work, as that was the contract mode of payment.   In *Rice* v. *Talmadge*, 20 Vt. 378, the trustee was charged in a sum certain, payable in leather.   The correctness of this judgment was not specially decided by the supreme court, but the court treated it as falling within the

same principle as contracts payable in specific articles, and proceeded to consider the case accordingly.

It was error, in the circumstances, to refuse the trustee Hatch costs below. The statute provides that if a person summoned as a trustee appears and submits himself to an examination upon oath, he shall be allowed his costs for travel and attendance, and such further sum as the court judges reasonable for his counsel fees and other necessary expenses. R. L. 1,158. This trustee did appear and submit himself to examination upon oath. Nor is the fact upon which he is held chargeable one that he denied and the plaintiff traversed, but it is one that he admitted on his examination, and it is found as he admitted it; therefore costs were not deniable to him under Rule 36 of the county court.

The refusal of costs to the plaintiff against the claimants was matter of discretion with the court below, and is not revisable here. R. L. 1,124; *Laclair* v. *Reynolds,* 50 Vt. 418.

*Judgment against the trustee Hatch reversed, and judgment that he is chargeable for* $11.75, *with interest thereon from the service of the writ, payable out of Clark & Hatch's store, according to the agreement in respect of payment found by the commissioner; and costs are adjudged to said trustee in this court and in the county court against the plaintiff. In all other respects the judgment below is affirmed, with costs in this court to the plaintiff against the claimants, who excepted to the judgment against the other trustees as well as to the judgment against Hatch.*